Sally E. Slaughter v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-222-CR

     SALLY E. SLAUGHTER,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 52nd District Court
Coryell County, Texas
Trial Court # FDP-97-14450
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      On April 4, 1997, Sally Slaughter pled guilty to possession of marihuana, a Class B
misdemeanor.


 Tex. Health & Safety Code Ann. § 481.121(b)(1) (Vernon 2003). The trial
court placed her on two years’ deferred-adjudication community supervision. In July 1998, the
State filed a motion to adjudicate guilt. On March 5, 1999, one month before her release date of
April 3, 1999, the trial court extended the term of deferred-adjudication community supervision
for one year, making Slaughter’s release date April 3, 2000.
      In February 2000, the State filed another motion to adjudicate guilt. On March 31, 2000, the
trial court granted the motion, adjudicated guilt, and placed Slaughter on two years of regular
community supervision, dating from March 24, 2000. On March 18, 2002, the State filed a third
amended motion to revoke community supervision; a hearing was held (without objection) on that
same date. Slaughter pled “no contest” to the allegations in the motion, which the trial court
granted; the court sentenced Slaughter to sixty days in jail. Judgment was signed on April 8,
2002.
      On appeal, as at trial, Slaughter argues that the trial court lacked jurisdiction to revoke her
community supervision. She says that, in a misdemeanor, the total period of community
supervision cannot exceed three years, and three years from April 4, 1997, expired before the
revocation in March 2002. The success of her argument necessitates the aggregation of the
periods under both deferred-adjudication and regular community supervision.
      The various statutes under which community supervision may be ordered in a
misdemeanor—whether judge-ordered regular community supervision, jury-recommended regular
community supervision, or judge-ordered deferred-adjudication community supervision—contain
almost identical provisions that the originally-imposed period of community supervision cannot
exceed two years, which can be extended; but the maximum aggregated original and extended
terms ordinarily cannot exceed three years. Tex. Code Crim. Proc. Ann. art. 42.12, §§ 3(c)(d),
4(b)(c), 5(a), 22(c) (Vernon Supp. 2003). Article 42.12 is silent about the outcome concerning
the maximum aggregated period when a defendant is placed first on deferred-adjudication
community supervision and later on regular community supervision.
Rules of Statutory Construction
      In State v. Mason, the Court of Criminal Appeals instructed us in the interpretation of penal
statutes:
This Court and the other appellate courts of this state have the duty to interpret the laws
enacted by our State Legislature. Tex. Const. art. II, § 1; and Boykin v. State, 818 S.W.2d
782, 785 (Tex. Crim. App. 1991). To carry out this duty, this Court must attempt to discern
the collective intent or purpose of the legislators who enacted the legislation. "We necessarily
focus our attention on the literal text of the statute in question and attempt to discern the fair,
objective meaning of that text at the time of its enactment." When reviewing the literal text
of the statute, this Court will read the words and phrases of the statute in context and construe
them "according to the rules of grammar and common usage." Tex. Gov't. Code Ann. §
311.011(a). When the meaning of the text of a statute should have been plain to the
legislators who voted on it, "we ordinarily give effect to that meaning." Boykin, 818 S.W.2d
at 785. "Where the statute is clear and unambiguous, the Legislature must be understood to
mean what it has expressed, and it is not for the courts to add or subtract from such a statute." 
Coit v. State, 808 S.W.2d 473, 475 (Tex. Crim. App. 1991); and cases cited therein.
 
This Court recognized one exception to the "plain meaning rule." When the application of
a statute's plain language would lead to absurd consequences that the Legislature could not
possibly have intended, we should not apply the language literally. Boykin, 818 S.W.2d at
785; and cases cited therein. "When used in the proper manner, this narrow exception to the
plain meaning rule does not intrude on the lawmaking powers of the legislative branch, but
rather demonstrates respect for that branch, which we assume would not act in an absurd way.
 Id. An inquiry into the intent of the legislators who passed a statute is, at best, a secondary
resource for interpreting that statute. "If the plain language of a statute would lead to absurd
results, or if the language is not plain but rather ambiguous, then and only then, out of
absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a
sensible interpretation, such extratextual factors as executive or administrative interpretations
of the statute or legislative history." Boykin, 818 S.W.2d at 785-786.

State v. Mason, 980 S.W.2d 635, 638 (Tex. Crim. App. 1998).
Analysis
      In Dunn v. State, we addressed a similar issue under previous provisions of article 42.12. 
Dunn v. State, 997 S.W.2d 885 (Tex. App.—Waco 1999, pet ref’d). Dunn was placed on three
years’ deferred-adjudication community supervision for a felony, and later on ten years’ regular
community supervision. Id. at 888. He argued that the total period could not exceed ten years. 
Id. We concluded that, because of specific language in the statute, the ten-year provision did not
include the time spent on deferred adjudication. Id. at 891. However, Dunn was decided under
a previous version of section three of article 42.12, and the language we relied on in Dunn has
been deleted and new language added. Therefore, our holding in Dunn does not resolve the issue
before us.
      We must discern the collective intent or purpose of the Legislature in enacting these
provisions as part of the community-supervision scheme set out in article 42.12. Mason, 980
S.W.2d at 638. We note that under section five, “[a]fter an adjudication of guilt, all proceedings,
including assessment of punishment, pronouncement of sentence, granting of community
supervision, and defendant’s appeal continue as if the adjudication of guilt had not been deferred.”
 Tex. Code Crim. Proc. Ann. art. 42.12, § 5 (emphasis added). Therefore, if a “deferred” case
proceeds to an adjudication, and then either to incarceration or placement on regular community
supervision, the Legislature has directed that the placement on deferred-adjudication community
supervision be, in essence, ignored.
      Thus, because the trial court proceeded to adjudication within the original three-year period,
it had authority to grant regular community supervision for an additional two years. And
Slaughter’s community supervision was revoked within that two years.
      Slaughter refers us to legislative history from 1993 when the Legislature amended article
42.12.


 She argues that this legislative history shows that the Legislature intended for deferred-adjudication and regular community supervision to be considered “as one,” at least in so far as
the aggregated time periods are concerned. However, we do not consult legislative history unless
“the plain language of a statute would lead to absurd results, or if the language is not plain but
rather ambiguous.” Mason, 980 S.W.2d at 638 (citing Boykin, 818 S.W.2d at 785-86). That is
not so here. Furthermore, even if we were to consider Slaughter’s references to legislative
history, we do not find them persuasive, because they do not expressly, or impliedly, support her
argument.
      .
      We overrule this issue.
Conclusion
      We affirm the judgment.
                                                                         BILL VANCE
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed May 21, 2003
Publish
[CR25]