Curley James BOYKIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 1539–89.

Court of Criminal Appeals of Texas, En Banc.

Oct. 9, 1991.

Rehearing Denied Nov. 20, 1991.

---

Allen Tanner, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Cheryl Boyd & Alex Azzo, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant, Curley James Boykin, was charged with, and a jury found him guilty of, delivering a simulated controlled substance while expressly representing that substance to be cocaine. Tex.Rev.Civ.Stat. art. 4476–15b, § 2(a)(1) (1983 Tex.Gen.Laws 1614–1615, ch. 306, § 2). The trial court assessed punishment at imprisonment for ten years. The Fourteenth Court of Appeals reversed, holding that the evidence adduced at trial was insufficient to prove appellant *expressly* represented the substance to be cocaine. *Boykin v. State*, 779 S.W.2d 134 (Tex.App.—Houston [14th Dist.] 1989). We granted the State's petition for discretionary review, pursuant to Texas Rule of Appellate Procedure 200(c)(1), in order to consider whether the evidence was indeed insufficient. To answer this question, we must determine whether, under Article 4476–15b, § 2(a)(1), a representation involving *only slang terminology* can ever be an *express* representation. In other words, the evidentiary sufficiency question is, in this context, actually a question of statutory construction. We will affirm the judgment of the court of appeals.

Viewed in the light most favorable to the verdict, the evidence at trial established the following: At approximately 7:00 p.m., May 28, 1988, an undercover police officer was driving an unmarked vehicle down McNeil Street in Houston when appellant, who was standing alongside the street, motioned for him to pull over. The officer drove to the side of the street and stopped. Appellant then walked up to the vehicle and asked the officer what he "needed". The officer responded that he needed to buy a "ten-cent rock". Appellant told the officer that he had only "twenty-cent rocks" for sale. The officer then agreed to buy a twenty-cent rock and gave appellant a twenty-dollar bill. Appellant left and returned shortly thereafter with a rock-like substance, which he displayed to the officer. The officer accepted the substance and left the area. Subsequent chemical analysis revealed the substance to be soap. The evidence at trial established also that at the time of the offense, in certain parts of Houston, cocaine was referred to as "rock", "stone", "coke", or "crack", "depend[ing] on the area of town" one was in.

The court of appeals held the evidence insufficient to prove appellant's guilt under Tex.Rev.Civ.Stat. art. 4476–15b, § 2(a)(1), which was, as noted previously, the statutory provision under which appellant was charged and tried. The court of appeals explained:

> The state has the burden of proving each and every element of the crime beyond a reasonable doubt. Because an element of the offense charged in this case was that appellant "expressly represented the substance to be a controlled substance, namely cocaine," the state had the burden of proving this beyond a reasonable doubt. Even viewed in the light most favorable to the prosecution, the evidence in the record is insufficient to establish that the appellant expressly represented the substance to be cocaine. The record reflects that the appellant

used the term "rock," apparently a street name for cocaine, which constituted a representation, under § 2(a)(2), that would lead a reasonable person to believe the substance to be a controlled substance. The appellant, however, was not charged with committing the offense of delivery of a simulated controlled substance under the circumstances described in § 2(a)(2).

*Boykin,* at 136 (citations and some punctuation omitted).

At the time of the alleged offense, Article 4476–15b [1] provided in relevant part:

§ 1. DEFINITIONS. In this Act:

(1) *"Controlled substance" has the same meaning as given that term in Section 1.02, Texas Controlled Substances Act....* [2]

(2) "Deliver" or "delivery" means the actual or constructive transfer from one person to another of a simulated controlled substance ...

\*    \*    \*    \*    \*    \*

(4) "Simulated controlled substance" means a substance that is purported to be a controlled substance, but is chemically different from the controlled substance it is purported to be.

§ 2. DELIVERY PROHIBITED.

(a) *A person commits an offense if the person knowingly or intentionally ... delivers a simulated controlled substance and the person:*

(1) *expressly represents the substance to be a controlled substance* [or]

(2) represents the substance to be a controlled substance in a manner that would lead a reasonable person to believe that the substance is a controlled substance.

(Emphasis added.)

In its brief to this Court, the State argues that the evidence at trial *did* show that appellant expressly represented the

---

**1.** Article 4476–15b was repealed in 1989 and reenacted as Tex.Health & Safety Code ch. 482.

**2.** At the time in question, the Controlled Substances Act was contained in Tex.Rev.Civ.Stat. art. 4476–15. It defined "controlled substance"

as "a drug, substance, or immediate precursor listed in Schedules I through V or Penalty Groups 1 through 4 of this Act." In 1989 the Controlled Substances Act was repealed and reenacted as Tex.Health & Safety Code ch. 481.

substance in question to be cocaine. The State contends that slang terms "are frequently as specific in their meanings as [is] the scientific nomenclature utilized by chemists and the Texas Legislature [in the Controlled Substances Act]", and that, therefore, it is sometimes possible for a person to expressly represent a substance to be a controlled substance simply by using slang terminology. The State concludes that the evidence at trial was sufficient to support appellant's conviction because there was some evidence that, at the time and place in question, "rock" was an accepted term for cocaine.

In his response brief, appellant contends that a representation of a substance as a controlled substance is express, for the purposes of Article 4476–15b, § 2(a)(1), only if that representation involves use of a term listed in the Controlled Substances Act.

The issue presented is, then, whether Article 4476–15b, § 2(a)(1), criminalized representations involving only slang terminology.

*Statutory Interpretation*

██ When we interpret statutes such as Article 4476–15b, § 2(a)(1), we seek to effectuate the "collective" intent or purpose of the legislators who enacted the legislation. *Camacho v. State,* 765 S.W.2d 431 (Tex.Cr.App.1989). We do so because our state constitution assigns the law*making* function to the Legislature while assigning the law *interpreting* function to the Judiciary. See Tex. Const. art. II, § 1.

██ When attempting to discern this collective legislative intent or purpose, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment. We do this because the text of the statute *is the law* in the sense that it is the only thing actually adopted by the legislators, probably through compromise, and submitted to the Governor for her signature. We focus on the literal text also because the text is the only *definitive* evidence of

what the legislators (and perhaps the Governor) had in mind when the statute was enacted into law. There really is no other certain method for determining the collective legislative intent or purpose at some point in the past, even assuming a single intent or purpose was dominant at the time of enactment. Yet a third reason for focussing on the literal text is that the Legislature is *constitutionally entitled* to expect that the Judiciary will faithfully follow the specific text that was adopted.

██ Thus, if the meaning of the statutory text, when read using the established canons of construction relating to such text,[3] should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning. *Smith v. State,* 789 S.W.2d 590, 592 (Tex.Cr.App. 1990). " 'Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.' " *Coit v. State,* 808 S.W.2d 473, 475 (Tex.Cr.App.1991) (quoting *Ex parte Davis,* 412 S.W.2d 46, 52 (Tex.Cr.App.1967)).

██ There is, of course, a legitimate exception to this plain meaning rule: where application of a statute's plain language would lead to absurd consequences that the Legislature could not *possibly* have intended, we should not apply the language literally. *Faulk v. State,* 608 S.W.2d 625, 630 (Tex.Cr.App.1980). When used in the proper manner, this narrow exception to the plain meaning rule does not intrude on the lawmaking powers of the legislative branch, but rather demonstrates respect for that branch, which we assume would not act in an absurd way.

██ If the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, then *and only then,* out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such *extra*textual factors as executive or administrative inter-

---

3. See, e.g., 82 C.J.S. *Statutes* §§ 329–348 (1953). It should be remembered that the canons of

construction are no more than rules of logic for the interpretation of texts.

pretations of the statute or legislative history.[4]

This method of statutory interpretation is of ancient origin and is, in fact, the only method that does not unnecessarily invade the lawmaking province of the Legislature. The courts of this and other jurisdictions, as well as many commentators, have long recognized and accepted this method as constitutionally and logically compelled. See, e.g., *West Virginia Univ. Hospitals, Inc. v. Casey,* ── U.S. ──, 111 S.Ct. 1138, 1146–1147, 113 L.Ed.2d 68 (1991); *Demarest v. Manspeaker,* ── U.S. ──, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991); *Public Citizen v. U.S. Dept. of Justice,* 491 U.S. 440, 109 S.Ct. 2558, 2574–2575, 105 L.Ed.2d 377 (1989) (Kennedy, J., concurring); *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917); *Republicbank Dallas v. Interkal,* 691 S.W.2d 605, 607 (Tex.1985); *Sparks v. State,* 76 Tex.Crim. 263, 174 S.W. 351, 352 (Tex.Cr. App.1915); E. Crawford, *The Construction of Statutes* § 164 (1940); H. Black, *Handbook on the Construction and Interpretation of the Laws* §§ 24–27, 85 (1896); 2A N. Singer, *Sutherland on Statutory Construction* §§ 46.01–46.07 (1984 & Supp. 1991); 1 W. LaFave & A. Scott, *Substantive Criminal Law* § 2.2 (1986); 82 C.J.S. *Statutes* § 322 (1953).

*Analysis*

█ In our view, the meaning of § 2(a)(1) should have been plain to legislators reading it in context at the time of its enactment. See 82 C.J.S. *Statutes* § 348 (statutory text must be understood in context). And a literal application of its plain language does not lead to absurd consequences. Thus, we may not go beyond the text of the statute in interpreting it.

Section 2(a)(1), by its literal wording, criminalized only "express" representa-

tions. The dictionary defines "express" as "clear; definite; explicit; plain; direct; unmistakable." *Black's Law Dictionary* 580 (6th ed. 1990). Therefore, § 2(a)(1) required a representation the meaning of which is absolutely unmistakable. Only a representation employing a term listed in the Controlled Substances Act can ever truly meet this requirement. Representations involving slang terms cannot be thought of as unmistakable, for the meanings of such terms change from time to time, from place to place, and sometimes even from person to person. Representations utilizing the statutory controlled substance terms are, on the other hand, unmistakable at all times and in all places.

This interpretation of § 2(a)(1) is also persuasive *given the textual* context, since § 2(a)(2) clearly *does* encompass representations involving only slang terminology. If we interpreted § 2(a)(1) in the way the State suggests, then § 2(a)(2) would be essentially superfluous. It would be illogical to presume that the Legislature intended a part of the statute to be superfluous.

We hold, therefore, that, for the purposes of Article 4476–15b, § 2(a)(1), an express representation is one using the terms listed in the Controlled Substances Act. Thus, § 2(a)(1) did not criminalize representations using only slang terms. It follows, then, that the evidence at appellant's trial was insufficient to prove his guilt *under § 2(a)(1).* Plainly, the State prosecuted appellant under the wrong statutory provision.

The judgment of the court of appeals is affirmed.

McCORMICK, Presiding Judge, dissenting.

The majority's guidelines for interpreting statutes are articulate and precise; how-

---

**4.** Although Section 311.023 of the Texas Government Code invites, but does not require, courts to consider extratextual factors when the statutes in question are *not* ambiguous, such an invitation should be declined for the reasons stated in the body of this opinion. See also *Armadillo Bail Bonds v. State,* 802 S.W.2d 237 (Tex.Cr.App.1990) (legislature may not interfere in core judicial functions); *Sparks v. State,* 76 Tex.Crim. 263, 174 S.W. 351, 352 (Tex.Cr.App.

1915) ("Where the meaning of the [statutory] words used is plain, the act must be carried into effect according to its language, or the courts would be assuming legislative authority."); J. Thomas, *Statutory Construction When Legislation is Viewed as a Legal Institution,* 3 Harv.J.Legis. 191, 211 n. 85 (1966) (interpretation statutes that "seek[ ] to control the attitude or the subjective thoughts of the judiciary" violate the separation of powers doctrine).

ever, the application of these guidelines to Article 4476–15b is clearly misguided. Because the majority's "plain reading" of the statute leads to the absurd result that only drug dealers with the ability to call controlled substances by their statutory scientific terms can commit an offense under Section 2(a)(1) (hereafter "Subsection 1"), I dissent.

The Legislature provides two different methods in this statute for a person to represent that a delivered substance is a controlled substance.[1] Subsection 1 requires a person to "expressly represent," that is, *to directly or unmistakably state* that the substance is a controlled substance. Subsection 2 requires a person to "represent the substance in a manner that would lead a reasonable person to believe," that is, *to imply by conduct,* that the delivered substance is a controlled substance. The Legislature emphasized this distinction by simultaneously enacting an evidentiary rule that pertains uniquely to conduct and refers only to Subsection 2. Specifically, Section 3 [2] of the statute permits a court to consider the physical appearance, the packaging and the consideration exchanged in a transaction to determine whether a substance was represented to be a controlled substance. Thus, it is clear from this statutory scheme that the Legislature intended Subsection 2 to describe a representation *to be inferred from conduct* and Subsection 1 to describe a *direct verbal expression.*

The majority correctly states that "we may not go beyond the text of the statute in interpreting it" if a literal application of the "plain language" does not lead to absurd consequences. In fact, however, the majority goes beyond a literal reading of the text to impose a condition on the statute which is neither apparent from its language nor logical in its results.

I cannot dispute that when and if a drug dealer ever uses the statutory scientific terminology his representation could not be more "clear, definite, explicit, plain, direct, and unmistakable." The majority accurately employs these synonyms, but fails to explain where the language of the statute or even the definition of "express" indicates that an "express" is or should be limited to "verbatim." [3] The majority "plain reading" imposes a condition on the statute that is not apparent from its text.

In addition, the majority fails to include a significant part of the definition of "express" in *Black's Law Dictionary,* which states that "express" is:

"declared in terms; set forth in words. Directly and distinctly stated. Made known distinctly and explicitly, and not left to inference. *Manifested by direct and appropriate language, as distinguished from that which is inferred*

1. Section 2 of Article 4476–15b of the Texas Revised Civil Statutes provided:
   "A person commits an offense if the person knowingly or intentionally ... delivers a simulated controlled substance and the person:
   "(1) expressly represents the substance to be a controlled substance [or]
   "(2) represents the substance to be a controlled substance in a manner that would lead a reasonable person to believe that the substance is a controlled substance."
   In 1989, Article 4476–15b was repealed and recodified in Chapter 482 of the Texas Health & Safety Code. Section 2 is now codified as Tex. Health & Safety Code Ann. Section 482.002 (1989).

2. Section 3 of Article 4476–15b of the Texas Revised Civil Statutes provided:
   "In determining whether a person has represented a simulated controlled substance to be a controlled substance in a manner that would lead a reasonable person to believe the substance was a controlled substance, a court may consider, in addition to all other logically relevant factors, whether:
   "(1) the simulated controlled substance was packaged in a manner normally used for the delivery of a controlled substance;
   "(2) the delivery or intended delivery included an exchange of or demand for property as consideration for delivery of the substance and the amount of the consideration was substantially in excess of the reasonable value of the simulated controlled substance; and
   "(3) the physical appearance of the finished product containing the substance was substantially identical to a controlled substance."
   In 1989, Section 3 of Article 4476–15b was repealed and recodified in Chapter 482 of the Texas Health & Safety Code. Section 3 is now codified as Tex.Health & Safety Code Ann. Section 482.003(a) (1989).

3. After a careful perusal of dictionaries, I cannot find one that equates the definition of "express" with "verbatim."

*from conduct.* The word is usually contrasted with implied." (emphasis added). When the complete definition is applied to the statute, the "plain meaning" of "express representation" in Subsection 1 is obvious—an "express representation" is "directly stated or verbal"—in contrast to Subsection 2, which applies to a representation manifested or implied by conduct.

The majority's contrived definition ultimately leads to ludicrous consequences. Does the majority really believe that drug dealers know the scientific terms listed in the Controlled Substances Act—let alone use them in drug transactions? By ignoring the realities of drug transactions, the majority again disregards its own guidelines for statutory interpretation. Declaring that "the meaning of § 2(a)(1) [Subsection 1] should have been plain to legislators reading it in context at the time of its enactment," the majority then ignores the context of the statute.

Reading in context means that we consider words in the situation in which they are used, together with the purpose for which they are stated and the person to whom the statement is made. For example, if a person has a headache and asks for "aspirin," he is given "aspirin." In the context of this request, it is both *direct* and *unmistakable* what is being delivered, despite the failure to use the scientific term, "acetylsalicylic acid." See PHYSICIAN'S DESK REFERENCE FOR NONPRESCRIPTION DRUGS (1981) at p. 539. Likewise, in the context of a drug transaction, a request for and offer to deliver "acid" is a *direct* and *unmistakable* offer to deliver the controlled substance of "lysergic acid diethylamide." [4] Thus, even though the scientific terms are unmistakable, street names are as specific and unmistakable in their meanings when considered in the context of drug transactions. Indeed, only one other court to decide this issue has concurred with the majority. See *Jenkins v. State*, 788 S.W.2d 677, 680 (Tex.App.—Texarkana 1990) ("twenty-cent rock" unambiguously meant cocaine in the context of this transaction); *Simpson v. State*, 787 S.W.2d 539, 543 (Tex.App.—Houston [1st Dist.] 1990) ("hash or hashish" is street name for marihuana tetrahydrocannabinol and "expressly represents" a controlled substance); *Dunn v. State*, No. 10–89–002–CR (Tex.App.—

---

**4.** The following is only a partial list of slang or street terminology that has been recognized in the courts of this State as well as federal courts: *Culmore v. State*, 447 S.W.2d 915, 919 n. 3 (Tex.Cr.App.1969) (*acid* = lysergic acid diethylamide or LSD); *Black v. State*, 739 S.W.2d 638, 641 n. 5 (Tex.App.—Dallas 1987, no pet.) (*angel dust* = phencyclidine); *United States v. Martin*, 869 F.2d 1118, 1119 (8th Cir.1989) (same); *De Freese v. United States*, 270 F.2d 730, 732 n. 2 (5th Cir.1959) (*bennies* = tablets of Benzedrine, the product name for amphetamine); *Osban v. State*, 726 S.W.2d 107, 108 n. 1 (Tex.Cr.App. 1986) (*black molly* = amphetamine); *Belmarez v. State*, 509 S.W.2d 635, 636 (Tex.Cr.App.1974) (Morrisson, J., dissenting) (same); *United States v. Andrus*, 775 F.2d 825, 838 (7th Cir.1985) (*coke* = cocaine); *United States v. Moser*, 509 F.2d 1089, 1090 n. 2 (7th Cir.1975) (same); *United States v. Horton*, 646 F.2d 181 (5th Cir.1981) (*crack* = cocaine); *Eminger v. State*, 718 S.W.2d 406, 407 (Tex.App.—Fort Worth 1986, no pet.) (*crank* = amphetamine); *Layton v. State*, 738 S.W.2d 763, 765 (Tex.App.—Beaumont 1987, no pet.) (*crystal* = methamphetamine); *United States v. Simpson*, 709 F.2d 903, 906 (5th Cir. 1983) (same); *United States v. Quintana*, 508 F.2d 867, 880 (7th Cir.1975) (*horse* = heroin); *United States v. Sawyer*, 210 F.2d 169, 170 (3rd Cir.1954) (same); *Bean v. State*, 641 S.W.2d 351, 352 (Tex.App.—Corpus Christi 1982, no pet.) (*number four* = K–4 dilaudid tablet containing hydromorphone); *Black v. State, supra,* at 641 n. 5 (*PCP* = phencyclidine); *United States v. Martin, supra,* at 1119 (same). *Texas State Board of Pharmacy v. Seely*, 764 S.W.2d 806, 808 n. 2 (Tex.App.—Austin 1988, writ denied) (trade name *Preludin* = phenmetrazine); *United States v. Hooker*, 541 F.2d 300, 304 (9th Cir.1975) (*reds* = seconal tablets); *United States v. Rosenberg*, 515 F.2d 190, 192 n. 3 (9th Cir.1975) (same); *United States v. Larson*, 507 F.2d 385, 388 (9th Cir.1974) (same); *Clark v. State*, 777 S.W.2d 723, 724 (Tex.App.—Beaumont 1989, no pet.) (*rocks* = cocaine); *Jones v. State*, 685 S.W.2d 86, 89 n. 2 (Tex.App.—Beaumont, 1984, no pet.) (*set* = combination of tripellanimine and pentazocine); *United States v. Bourbon*, 819 F.2d 856, 857 (8th Cir.1987) (*snow* = cocaine); *Culmore v. State*, supra, at 919 n. 3 (*speed* = methamphetamine); *United States v. Schrock*, 855 F.2d 327, 333 (6th Cir.1988); *United States v. Quintana, supra,* at 877 n. 1 (same); *United States v. Larson, supra,* at 388 (same); *Culmore v. State, supra,* at 919 n. 3 (*weed* = marihuana); *Hernandez v. State*, 159 Tex.Crim. 178, 262 S.W.2d 200 (1953) (same); *Holliman v. State*, 692 S.W.2d 120, 122 (Tex.App.—Waco 1985, pet. ref'd) (same); *United States v. Murray*, 527 F.2d 401, 407 (5th Cir.1976) (same); *United States v. Rosenberg, supra,* at 192 n. 4 (*whites* = dextroamphetamine).

Waco, Sept. 28, 1989) (not published) ("By calling the substance 'rock' appellant 'expressly represented' the substance to be cocaine."). *Contra Boykin v. State,* 779 S.W.2d 134, 136 (Tex.App.—Houston [14th Dist.] 1989) ("rock" is street name for cocaine but is not an "express representation").

The sole justification for the majority's (mis)interpretation of the statute is its purported attempt to give "meaning" to both subsections. However, by interpreting Subsection 1 to require a "verbatim" recitation of terms in the Controlled Substances Act, the majority renders Subsection 1 useless in all but the rarest of cases. My "plain reading" of the statute gives both subsections a logical and common-sense meaning. Therefore, I would reverse the judgment of the Court of Appeals and hold that evidence showing slang or street terminology clearly spoken and understood by all parties involved to represent a controlled substance is sufficient to prove an offense under Article 4476–15b, Section 2(a)(1).

WHITE, J., joins this dissent.

MILLER, Judge, dissenting.

I disagree with the majority opinion's treatment of the statutory interpretation question and its failure to consider the legislative history of this statute, Art. 4476–15b, § 2(a). See maj. op. at 786 and n. 4. Based on my experience in both *Studer v. State,* 799 S.W.2d 263 (Tex.Crim. App.1990), and *Dillehey v. State,* 815 S.W.2d 623 (Tex.Crim.App.1991), it is clear that often ambiguity in a statute is not apparent until the legislative history is researched and the true legislative intent is discerned. Thus, when the majority says:

> If the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, then *and only then,* out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such *extra*textual factors as executive or administrative interpretations of the statute or legislative history.

*Boykin,* Op. at p. 785. (footnote omitted) (emphasis in original), it is considering the cart before the horse.

In *Studer,* 799 S.W.2d 263, this Court was confronted with interpreting for the first time the recently amended Art. V, § 12, Tex. Const., and Art. 1.14(b), V.A.C.C.P.; specifically we had to interpret the meaning of the terms "indictment" and "information" under the amendments. Both terms, heretofore, had clear and unambiguous meanings which, germane to the issue at hand, mandated that a charging instrument that did not contain all of the requisite elements of the charged offense was NOT an indictment or information. Under the majority's reasoning in the case at bar, we should have gone no farther in *Studer* and maintained the "old" definitions. However, after an extensive review of legislative history (the severely maligned *"extra*textual factors" abhorred by the majority), this Court determined that the legislature did not intend to define an "indictment" or "information" as an instrument alleging all the constituent elements of an offense. See discussion *id.* at 268–271. Only by consulting the legislative history was the Court able to *discover* and then remove the ambiguity as to what constituted an indictment (or information) and effectuate the legislature's intent in proposing and passing the amendments.

The same held true in *Dillehey* where this Court was called upon to determine whether a defendant could appeal from a deferred adjudication probation under Art. 44.01(j), V.A.C.C.P., the code provision authorizing the State's right to appeal. Applying a strict construction to the statute, without consulting the legislative history, easily led to the result reached by the dissent in *Dillehey,* as well as the court of appeals in that case. See *Dillehey,* 815 S.W.2d 623 (Baird, J., dissenting) and *Dillehey v. State,* 788 S.W.2d 154 (Tex.App.—Dallas 1990). The undiscovered ambiguity of this statutory provision *only became apparent* when the legislative history, specifically the Senate floor debates, was researched. Then and only then was the ambiguity between Art. 44.01(j), Art. 44.02 (the defendant's right to appeal) and Art.

**790**

42.12, § 3d (now § 5) (provision for deferred adjudication), which was not recognized by the dissent or by the court of appeals, realized and dealt with. The majority of this Court of course thereby discovered and effectuated the clear intent of the legislature in passing 44.01(j), *viz:* to allow defendants placed on deferred adjudication probation to immediately appeal rulings on pretrial motions in compliance with Art. 44.02. *Dillehey*, 815 S.W.2d 623, 626–.

In my opinion, the majority's failure to appreciate the role of legislative history in judicial interpretation of constitutional and statutory law has led to a failure to research the legislative history in this cause and thereby led the majority to an incorrect analysis and conclusion. Therefore, I must dissent.