**Sally E. SLAUGHTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–02–222–CR.**

Court of Appeals of Texas, Waco.

May 21, 2003.

Rehearing Overruled July 23, 2003.

Discretionary Review Dismissed Sept. 24, 2003.

Greg Gladden, Law Office of Greg Gladden, Houston, for appellant.

Riley J. Simpson, Coryell County Dist. Atty., Gatesville, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

On April 4, 1997, Sally Slaughter pled guilty to possession of marihuana, a Class B misdemeanor.[1] TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(1) (Vernon 2003). The trial court placed her on two years' deferred-adjudication community supervision. In July 1998, the State filed a motion to adjudicate guilt. On March 5, 1999, one month before her release date of April 3, 1999, the trial court extended the term of deferred-adjudication community supervision for one year, making Slaughter's release date April 3, 2000.

In February 2000, the State filed another motion to adjudicate guilt. On March 31, 2000, the trial court granted the motion, adjudicated guilt, and placed Slaughter on two years of regular community supervision, dating from March 24, 2000. On March 18, 2002, the State filed a third amended motion to revoke community supervision; a hearing was held (without objection) on that same date. Slaughter pled "no contest" to the allegations in the motion, which the trial court granted; the court sentenced Slaughter to sixty days in jail. Judgment was signed on April 8, 2002.

On appeal, as at trial, Slaughter argues that the trial court lacked jurisdiction to

---

1. The offense derived from a remnant of a marihuana cigarette that was found in the ashtray of her car when she visited her sister who was in a Texas prison—a felony. The offense was "pled down" to a misdemeanor.

revoke her community supervision. She says that, in a misdemeanor, the total period of community supervision cannot exceed three years, and three years from April 4, 1997, expired before the revocation in March 2002. The success of her argument necessitates the aggregation of the periods under both deferred-adjudication and regular community supervision.

 The various statutes under which community supervision may be ordered in a misdemeanor—whether judge-ordered regular community supervision, jury-recommended regular community supervision, or judge-ordered deferred-adjudication community supervision—contain almost identical provisions that the originally-imposed period of community supervision cannot exceed two years, which can be extended; but the maximum aggregated original and extended terms ordinarily cannot exceed three years. TEX.CODE CRIM. PROC. ANN. art. 42.12, §§ 3(c)(d), 4(b)(c), 5(a), 22(c) (Vernon Supp.2003). Article 42.12 is silent about the outcome concerning the maximum aggregated period when a defendant is placed first on deferred-adjudication community supervision and later on regular community supervision.

### Rules of Statutory Construction

In *State v. Mason*, the Court of Criminal Appeals instructed us in the interpretation of penal statutes:

> This Court and the other appellate courts of this state have the duty to interpret the laws enacted by our State Legislature. TEX. CONST. art. II, § 1; and *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). To carry out this duty, this Court must attempt to discern the collective intent or purpose of the legislators who enacted the legislation. "We necessarily focus our attention on the literal text of the statute in question

and attempt to discern the fair, objective meaning of that text at the time of its enactment." When reviewing the literal text of the statute, this Court will read the words and phrases of the statute in context and construe them "according to the rules of grammar and common usage." TEX. GOV'T.CODE ANN. § 311.011(a). When the meaning of the text of a statute should have been plain to the legislators who voted on it, "we ordinarily give effect to that meaning." *Boykin*, 818 S.W.2d at 785. "Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute." *Coit v. State*, 808 S.W.2d 473, 475 (Tex. Crim.App.1991); and cases cited therein.

This Court recognized one exception to the "plain meaning rule." When the application of a statute's plain language would lead to absurd consequences that the Legislature could not possibly have intended, we should not apply the language literally. *Boykin*, 818 S.W.2d at 785; and cases cited therein. "When used in the proper manner, this narrow exception to the plain meaning rule does not intrude on the lawmaking powers of the legislative branch, but rather demonstrates respect for that branch, which we assume would not act in an absurd way." *Id.* An inquiry into the intent of the legislators who passed a statute is, at best, a secondary resource for interpreting that statute. "If the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, then and only then, out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such extra textual factors as executive or administrative interpreta-

tions of the statute or legislative history." *Boykin,* 818 S.W.2d at 785–786. *State v. Mason,* 980 S.W.2d 635, 638 (Tex. Crim.App.1998).

### Analysis

■ In *Dunn v. State,* we addressed a similar issue under previous provisions of article 42.12. *Dunn v. State,* 997 S.W.2d 885 (Tex.App.-Waco 1999, pet ref'd). Dunn was placed on three years' deferred-adjudication community supervision for a felony, and later on ten years' regular community supervision. *Id.* at 888. He argued that the total period could not exceed ten years. *Id.* We concluded that, because of specific language in the statute, the ten-year provision did not include the time spent on deferred adjudication. *Id.* at 891. However, *Dunn* was decided under a previous version of section three of article 42.12, and the language we relied on in *Dunn* has been deleted and new language added. Therefore, our holding in *Dunn* does not resolve the issue before us.

We must discern the collective intent or purpose of the Legislature in enacting these provisions as part of the community-supervision scheme set out in article 42.12. *Mason,* 980 S.W.2d at 638. We note that under section five, "[a]fter an adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, *granting of community supervision,* and defendant's appeal continue as if the adjudication of guilt had not been deferred." Tex.Code Crim. Proc. Ann. art. 42.12, § 5 (emphasis added). Therefore, if a "deferred" case proceeds to an adjudication, and then either to incarceration or placement on regular community supervision, the Legislature has directed that the placement on deferred-adjudication community supervision be, in essence, ignored.

Thus, because the trial court proceeded to adjudication within the original three-year period, it had authority to grant regular community supervision for an additional two years. And Slaughter's community supervision was revoked within that two years.

■ Slaughter refers us to legislative history from 1993 when the Legislature amended article 42.12.[2] She argues that this legislative history shows that the Legislature intended for deferred-adjudication and regular community supervision to be considered "as one," at least in so far as the aggregated time periods are concerned. However, we do not consult legislative history unless "the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous." *Mason,* 980 S.W.2d at 638 (citing *Boykin,* 818 S.W.2d at 785–86). That is not so here. Furthermore, even if we were to consider Slaughter's references to legislative history, we do not find them persuasive, because they do not expressly, or impliedly, support her argument.

Finally, *Mason* cautions us to beware of "absurd" results when arriving at an interpretation of the statutes. *Id.* However, we do not find that our interpretation of the "plain meaning" of section five leads to "absurd" results.

We overrule this issue.

### Conclusion

We affirm the judgment.

---

**2.** In 1993, significant changes were made to numerous statutes in Texas criminal jurisprudence, including the creation of state-jail felonies.