NO. 07-08-0259-CV; 07-08-0260-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 20, 2009
______________________________

THE STATE OF TEXAS, APPELLANT

V.

JAMES GREEN D/B/A ALLSTATE BAIL BONDS, APPELLEE
_________________________________

FROM THE COUNTY COURT AT LAW #1 OF POTTER COUNTY;

NO. 9098-1, 9099-1; HONORABLE W. F. “CORKY” ROBERTS, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
OPINION ON MOTION TO DISMISS
          Appellant, the State of Texas, appeals from two judgments that each remitted $720,
minus accrued interest, from a previous bond forfeiture in favor of appellee, James Green
d/b/a Allstate Bail Bonds. Green has filed a motion to dismiss the State’s appeal for want
of jurisdiction. We grant the motion and dismiss the appeal for want of jurisdiction. 
          Green is the surety for two $1500 bonds on Daiton Earl Nivens. On March 31,
2006, the cases against Nivens were called for trial, but Nivens failed to appear. As a
result, on April 7, 2006, the trial court entered Judgment Nisi as to the bonds and ordered
both forfeited to the State. Green filed motions to quash the bonds. However, prior to any
hearing on the motions, the trial court entered an Agreed Final Judgment that ordered
forfeiture of $900 of the bond in each case and assessed costs of court associated with
the cases against Green. This agreed final judgment was signed by Green. 
          On December 19, 2007, Green filed an affidavit of incarceration notifying the Sheriff
of Potter County that Nivens was incarcerated in the Randall County Detention Center. On
the same date, Green filed a Special Bill of Review, under the authority of Texas Code of
Criminal Procedure article 22.17,


 requesting that the Final Judgments entered in these
cases be reformed and that all or part of the forfeited bonds be remitted to Green. After
hearing Green’s bill of review, the trial court entered Judgment remitting $720 on each
case to Green, minus accrued interest.
          The State filed Notices of Appeal on each of these Judgments. In addition, the
State requested findings of fact and conclusions of law, but no findings and conclusions
are contained within the record. 
          On February 24, 2009, Green filed a Motion to Dismiss the State’s Appeal for Want
of Jurisdiction. In the motion, Green contends that, due to the holding in State v. Sellers,
790 S.W.2d 316 (Tex.Crim.App. 1990), the State is not permitted to appeal in bond
forfeiture cases. In Sellers, the Court reviewed the history of articles 44.42


 and 44.01


 of
the Texas Code of Criminal Procedure. After analyzing these articles and applying them
to the facts of the case, the Court held that “neither Article 44.42 nor Article 44.01(a)(2) . . .
authorizes the State’s appeal in these causes.” Id. at 321. However, in its analysis of
article 44.01(a)(2), the Court was addressing the State’s argument that the trial court’s final
judgment was a modification of the trial court’s previous judgment nisi. The Court
explained that a judgment nisi is not enforceable by the State and, therefore, a “final
judgment following trial upon a judgment nisi cannot be considered an ‘order’ that ‘modifies’
an earlier ‘judgment’” as those terms are used in article 44.01(a)(2). Id. 
          By contrast, the present case does not involve the State’s attempt to appeal a
purported modification of a judgment nisi by way of a final judgment. Rather, the State is
actually appealing a reformation of a final judgment in a bond forfeiture case under article
22.17. See Tex. Code Crim. Proc. Ann. art. 22.17. The majority of the cases that have
addressed appeals of rulings on article 22.17 special bills of review have addressed the
defendant’s appeal and, thus, are inapplicable to the issue of our jurisdiction over the
State’s appeal. 
          In the only case addressing the issue of the State’s right to appeal a remittitur
ordered under article 22.17, see State v. Maldonado, 936 S.W.2d 14 (Tex.App.–San
Antonio 1996, no writ), the Court, believing itself bound by the “holding and implications”
of Sellers, concluded that article 44.01(a)(2) does not authorize the State to appeal a trial
court’s order entered pursuant to article 22.17. Id. at 16. While the Court acknowledged
that the facts of the case were distinguishable from those presented in Sellers,


 it indicated
that the State “has not made this argument in this case.” Id. Of course, whether a court
has jurisdiction over an appeal is a question of law and the proponent of the court’s
assertion of jurisdiction is not obligated to argue for the existence of the court’s jurisdiction. 
The Court additionally states that, “. . . it would be ironic, at best, if the State could appeal
an order of remittitur entered in a bill of review proceeding when, under Sellers, it plainly
could not appeal the same order if it were entered in a bond forfeiture proceeding within
the period of the trial court’s plenary power.” However, the basis for the Sellers holding
that the State cannot appeal an order entered within the period of the trial court’s plenary
power is that the order entered during the trial court’s plenary power is not a final order that
would bring it within the purview of article 44.01(a)(2). See Sellers, 790 S.W.2d at 320-21. 
In the present case as well as in Maldonado, the State is appealing a final judgment that
was “reformed” in accordance with the procedure identified in article 22.17 and, thus, ironic
or not, it falls within the express terms of article 44.01(a)(2), as acknowledged by the
Maldonado Court. Maldonado, 936 S.W.2d at 16. The Maldonado Court’s discomfort in
their reliance on Sellers is illustrated by the closing statement in the opinion, “While the
Texas Court of Criminal Appeals may ultimately hold that article 44.01(a)(2) authorizes the
State to appeal an order entered pursuant to article 22.17, we believe ourselves bound by
the holding and implications of Sellers. Accordingly, the State’s appeal is dismissed for
want of jurisdiction.”
          While we question the analysis of the Maldonado Court, we do not question its
holding. Sellers instructs us that article 44.42 does not authorize the State to appeal a final
judgment in a bond forfeiture proceeding. See Sellers, 790 S.W.2d at 319. However,
Sellers further provides that article 44.42 does not prohibit the State’s appeal in a bond
forfeiture case if otherwise authorized by the legislature. See id. We are aware of no
legislative authorization contained within the Code of Criminal Procedure or elsewhere that
would authorize the State to take a direct appeal from a final judgment in a bond forfeiture
proceeding. Thus, were we presented with the State’s direct appeal from a final judgment
in a bond forfeiture proceeding, we would have no pause in dismissing the appeal for want
of jurisdiction. 
          But, the present case is not a direct appeal from a final judgment in a bond forfeiture
proceeding. Rather, it is an appeal of a reformation of a final judgment. While we
acknowledge the State’s argument that article 44.01(a)(2) appears to authorize the State
to appeal an order that “arrests or modifies a judgment,” including a judgment in a bond
forfeiture proceeding, we find that it would be logically inconsistent for that article to
authorize the appeal of a modification of a final judgment, while at the same time not
authorizing the appeal of the original judgment. 
          Because we must construe statutory provisions in a manner that avoids illogical or
absurd results, see Boykin v. State, 818 S.W.2d 782, 785 (Tex.Crim.App. 1991), we hold
that article 44.01(a)(2) does not authorize the State to appeal a reformation of a final
judgment in a bond forfeiture proceeding. 
          For the foregoing reasons, we dismiss the State’s appeal for want of jurisdiction.
 
                                                                           Mackey K. Hancock

                                                                                      Justice













  



tion: underline">Id.
          The evidence at issue in the present case was Jones and Morgan’s testimony
regarding appellant’s possession of marijuana. During direct examination by the State,
Jones testified as follows:
[Prosecutor]: When you went up to the car, what did he do?
[Jones]: He rolled down his window.
[Prosecutor]: And when he rolled down the window, did you notice anything
unusual?
[Jones]: Yes. I smelled the odor of burnt marijuana coming from inside of the
vehicle.
[Prosecutor]: Now, you said you noticed the odor of burnt marijuana. During
– during your times as a police officer, have you received training and then
just on-the-field experience as to detecting the smell of certain types of
narcotics?
[Jones]: Yes, I have.
* * * *
[Prosecutor]: When you say you smelled the smell of burning marijuana – or
burnt marijuana, was it coming – or could you tell if it was coming from within
the vehicle or from his clothing or could you tell?
[Jones]: I couldn’t tell.
[Prosecutor]: Okay. Was it a strong smell or a faint smell?
[Jones]: It was very strong.
[Prosecutor]: And based on that, what did you say to him?
[Jones]: I asked him about the odor that I smelled – coming from inside of
the vehicle.
[Prosecutor]: And what did he say?
[Jones]: He said that it must be coming from his breath.
[The Court]: At this time, ladies and gentlemen, let me just instruct you with
regard to the evidence that you’ve heard and that you will hear about the
marijuana, you’re to consider that not for the purpose of determining guilt or
innocence of what the Defendant’s charged with in this case, but to
understand the state of mind of the officer and why he did what he did.
* * * *
[Prosecutor]: Okay. Once you smell narcotics coming from a vehicle –
something that you recognize to be narcotics, are you able to then search
the vehicle for those narcotics?
[Jones]: Yes, I am.
* * * *
[Prosecutor]: When – when he – when you got him out of the car and started
to do that [place him in the officer’s patrol car], did he say anything else to
you about the narcotics?
[Jones]: As I was patting him down I asked him if there was anything in the
vehicle I needed to know about, and he made the comment that there were
some roaches in the ashtray.
At this point, the State questioned Jones regarding the meaning of the term “roaches” and
Jones testified that it is a slang reference to the left-over portion of a marijuana cigarette.
Following this line of questioning, Jones testified about the discovery of the gun under the
driver’s seat of appellant’s vehicle. Toward the conclusion of Jones’s direct examination,
Jones testified as follows:
[Prosecutor]: Now, did you continue to look in the vehicle for the narcotics?
[Jones]: Yes, I did.
[Prosecutor]: And did you find any?
[Jones]: Yes, I did.
[Prosecutor]: Where did you find the narcotics?
[Jones]: In the ashtray.
[Prosecutor]: Is that where he told you that the roaches were?
[Jones]: Yes, he did.
[Prosecutor]: What did you find in the ashtray exactly?
[Jones]: There were two – actually there were three blunts. Two of them
were rolled in cigar paper – or not blunts, I’m sorry – roaches that were rolled
in cigar papers and one was rolled in regular cigarette paper.
 
Subsequent to the above testimony, the State offered pictures of the marijuana found in
the ashtray for admission into evidence. Appellant again objected and the trial court
sustained the objection. Officer Morgan testified that he also smelled the marijuana odor
coming from the vehicle. Morgan described the odor as smelling “fresh,” like the marijuana
had just been smoked.
          During closing arguments, the State again referenced appellant’s possession of
marijuana. The State argued that, 
This man, Richard Provencio, let me suggest to you is a man that has no
regard for the law.
* * * *
Here’s a guy in September of 2001 gets a four-year prison sentence for a
drug offense, a second-degree drug offense, serves part of his four years,
gets out on parole, serves the rest of the four years, and within six months
is driving down the streets of our town at 70 to 80 miles an hour, 12:00 a.m.
in the morning, with the smell of marijuana filling his car, marijuana –
smoked-down marijuana cigarettes and blunts in his ashtray, and a loaded
weapon directly underneath the seat where he’s driving.
 
Later in closing arguments, the State again referenced appellant’s possession of marijuana
to refute appellant’s challenge to whether he knowingly possessed the firearm. The State
argued,
That alone proves he had care, custody, and control of that gun. . . . why
didn’t he follow that with, because my girlfriend left it in the car because she
took it to and from work . . . why didn’t he tell him that? Because it’s not true. 
. . . He also said, I’ve got the roaches in the ashtray which turned out to be
true. He knew about those too.
 
          While we do not condone the State’s closing argument,


 appellant failed to preserve
error in this regard because he failed to object. "[A] defendant's failure to object to a jury
argument . . . forfeits his right to complain about the argument on appeal." Cockrell v.
State, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996). 
          Considering only the properly preserved error relating to the trial court’s admission
of Jones and Morgan’s testimony of appellant’s possession of marijuana, we conclude that
the admission of this extraneous offense evidence was not harmful to appellant. As
appellant’s sole defensive theory was that he did not knowingly possess the firearm, we
find the testimony of Officer Morgan, that appellant told him that there was a gun in the
vehicle before Officer Jones had in any way indicated that to be the case, to be particularly
compelling. This evidence strongly supports the verdict and negates appellant’s sole
defensive theory. As a result, we conclude that the evidence of appellant’s guilt was
overwhelming. In addition, the trial court did instruct the jury that, as to the evidence of the
marijuana, “you’re to consider that not for the purpose of determining guilt or innocence of
what the Defendant’s charged with in this case . . . .” Considering the totality of the
proceedings, we conclude that the erroneous admission of evidence that appellant
possessed marijuana did not have a substantial affect on the verdict.
 
Conclusion
          Because we conclude that the trial court’s erroneous admission of evidence of an
extraneous offense was harmless, we affirm the trial court’s judgment.
 
 
                                                                           Mackey K. Hancock

                                                                                    Justice







Do not publish.