IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. PD-0034-10 & PD-0035-10






THE STATE OF TEXAS



v.



CODY JOE POSEY, Appellee





ON APPELLEE'S PETITIONS FOR DISCRETIONARY REVIEW


FROM THE SIXTH COURT OF APPEALS


LAMAR COUNTY





 Keasler, J., filed a concurring opinion in which Hervey and Cochran, JJ.,
joined. 


CONCURRING OPINION 



 For different reasons than those of the majority, I would hold that a defendant must
be eligible for regular community supervision under Article 42.12, Section 3 to be eligible
for shock community supervision under Article 42.12, Section 6. Because an affirmative
deadly weapon finding renders a defendant ineligible for judge-ordered community
supervision under Article 42.12, Section3g, a defendant is therefore also ineligible for shock
community supervision. I therefore join the majority in affirming the court of appeals's
judgment. 

 We give effect to the plain meaning of a statute's text. (1) "Where the statute is clear
and unambiguous, the Legislature must be understood to mean what is has expressed, and
it is not for the courts to add or subtract from such a statute." (2) There is a key exception to
the plain meaning rule--when the application of the plain language would lead to absurd
results, that language should not be applied literally. (3)

 Article 42.12, Texas Code of Criminal Procedure, governs all aspects of community
supervision. (4) Section 2 defines community supervision as "the placement of a defendant by
a court under a continuum of programs and sanctions, with conditions imposed by a court for
a specific period . . . ." (5) The imposition of community supervision suspends the execution
of a sentence and is not a sentence itself. (6) 

 Section 3 addresses judge-ordered community supervision. (7) It allows a judge to
suspend the imposition of a sentence after a conviction, guilty plea, or no contest plea. (8) 
Within Section 3, subsection 3g provides limitations on judge-ordered supervision. (9) 
Subsection 3g states that the provisions of Section 3 permitting judge-ordered community
supervision do not apply: 

(1) to a defendant adjudged guilty under [certain enumerated offenses]. 

(2) to a defendant when it is shown that a deadly weapon . . . was used or
exhibited during the commission of a felony offense or during immediate flight
therefrom, and that the defendant used or exhibited the deadly weapon or was
a party to the offense and knew that a deadly weapon would be used or
exhibited. On an affirmative finding under this subdivision, the trial court
shall enter the finding in the judgment of the court . . . . (10) 


 Section 4 addresses jury-recommended community supervision. (11) It authorizes a jury
to recommend that the judge suspend the imposition of a sentence of confinement and place
the defendant on community supervision. (12) The judge must then follow the jury's
recommendation. (13) Subsection 4(d) lists factors that render a defendant ineligible for jury-recommended community supervision, but does not include a deadly-weapon limitation
under Section 3g. (14) Section 4(e) requires a defendant, before trial, to file "a written sworn
motion with the judge that the defendant has not previously been convicted of a felony" to
be eligible for jury-recommended community supervision. (15)

 Finally, Section 6 is entitled "Continuing Court Jurisdiction in Felony Cases," which
governs shock community supervision. (16) Section 6 authorizes a judge to suspend further
execution of a sentence of confinement once it has begun and place a defendant on
community supervision. (17) The judge may grant shock community supervision only if: (1)
the defendant is otherwise eligible for community supervision under this article [42.12]; and
(2) the defendant had never before been incarcerated in a penitentiary serving a sentence for
a felony. (18) The judge may grant shock community supervision on his own motion, on the
motion of the State's attorney, or on the written motion of the defendant. (19) The judge may
order shock community supervision only within 180 days from the day the execution of the
sentence of confinement begins. (20)

 A Texas defendant has the right to have a jury assess punishment. (21) A jury found
Cody Joe Posey guilty of criminally negligent homicide in two causes, both stemming from
a fatal traffic accident. The jury further found that Posey used his vehicle as a deadly weapon
during the accident. Posey elected to have the jury assess punishment, and the jury sentenced
him to two years in prison, but recommended community supervision, which the judge
imposed. The State later moved to revoke Posey's supervision and, after a hearing, the trial
judge concluded that Posey had in fact violated the terms of his supervision. The judge then
sentenced Posey to two years' confinement but noted that shock community supervision
could be appropriate later. Posey timely filed a motion for shock community supervision in
both causes, which the trial judge granted after a hearing. The judge signed two separate
orders, each granting shock community supervision.

 According to a plain reading of the statutes at issue, Section 6(a)(1)'s requirement that
a defendant "is otherwise eligible under this article" refers to Section 3, governing judge-ordered community supervision. Section 6 specifically refers to the trial "judge" and to the
"suspension of further execution of the sentence." The Legislature has specifically excluded
the jury from granting or recommending shock community supervision. Section 6 comes into
play only after a defendant has begun to serve a sentence, even if it was originally assessed
by a jury. It gives the judge some discretion--within 180 days of from the execution of the
sentence--to determine whether shock community supervision is appropriate rather than the
continuation of the executed sentence. When a defendant like Posey elected to have the jury
assess punishment, the jury fulfilled its duty when it assessed punishment. Additionally, the
use of the present tense "is" in Section 6 is of significance. The word "is" indicates that
shock community supervision eligibility is determined at the time that Section 6 can be
invoked. (22) Thus, the timing limitations in Section 6 establish that shock community
supervision eligibility is determined under Section 3. The phrase "is otherwise eligible under
[42.12]" in Section 6(a)(1), therefore, does not refer to the eligibility requirements for jury-recommended community supervision in Section 4.

 Any argument that Section 6(a)(1) refers to Article 42.12 in its entirety is undermined
by its inclusion of Section 5, which governs deferred adjudication community supervision. 
Section 6 cannot legitimately be read to include Section 5. Unlike Section 3 community
supervision, no guilt has been assessed, nor sentence imposed, under Section 5 deferred
adjudication community supervision. Section 6(a)'s shock community supervision expressly
contemplates the suspension of an executed sentence. (23) Common sense therefore dictates
that the phrase "eligibility for community supervision" in Section 6(a)(1) does not refer to
being otherwise eligible for supervision under Section 5.

 Additionally, Professors Dix and Dawson recognize that a redundancy with respect
to the similar limitations outlined in Sections 6(a)(2) and Section 4(e) militate against reading
Section 6(a)(1) to include jury-recommended community supervision:

 The legislature undoubtedly did not intend to include jury eligibility, because
it added the independent requirement of eligibility that the defendant has never
before been incarcerated in a penitentiary serving a sentence for a felony. That
requirement would be redundant because a jury could never give community
supervision to a defendant who had previously served a prison sentence. (24) 


 Finally, holding that the initial selection between a bench or jury trial should
determine a defendant's subsequent eligibility for shock community supervision would
discourage plea bargaining and, consequently, pleas of guilty and no contest. Defendants
who could be or are ineligible for community supervision under Section 3 may select a jury
trial for the sole purpose of remaining eligible for shock community supervision. 


DATE FILED: January 12, 2011

PUBLISH
1. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). 
2. Id. 
3. Id. 
4. Tex. Code Crim. Proc. Ann. § 42.12 (Vernon 2003).
5. Id. 
6. Speth v. State, 6 S.W.3d 530, 532 (Tex. Crim. App. 1999). 
7. Tex. Code Crim. Proc. Ann. § 42.12 § 3.
8. Tex. Code Crim. Proc. Ann. § 42.12 § 3(a). 
9. Tex. Code Crim. Proc. Ann. § 42.12 § 3g.
10. Id. 
11. Tex. Code Crim. Proc. Ann. § 42.12 § 4. 
12. Tex. Code Crim. Proc. Ann. § 42.12 § 4(a).
13. Tex. Code Crim. Proc. Ann. § 42.12 § 4(d). 
14. Id. 
15. Tex. Code Crim. Proc. Ann. § 42.12 § 4(e). 
16. Tex. Code Crim. Proc. Ann. § 42.12 § 6. 
17. Tex. Code Crim. Proc. Ann. § 42.12 § 6(a).
18. Tex. Code Crim. Proc. Ann. § 42.12 § 6(a)(1)-(2). 
19. Tex. Code Crim. Proc. Ann. § 42.12 § 6(b).
20. Tex. Code Crim. Proc. Ann. § 42.12 § 6(a).
21. Ivey v. State, 277 S.W.3d 43, 47 (Tex. Crim. App. 2009). 
22. See Tex. Gov't Code Ann. § 311.012(a) ("Words in the present tense include
the future tense."); cf. Ex parte Noyola, 215 S.W.3d 862, 867 (Tex. Crim. App. 2007)
("By incorporating Section 508.149(a) by reference, Section 508.283(c) invokes the
version of Section 508.149(a) in effect when the inmate's parole or mandatory
supervision is revoked.").
23. See 43A George E. Dix & Robert O. Dawson, Texas Practice: Criminal
Practice and Procedure § 39.63 (2d ed. 2001) (observing that "the point in the process
when shock community supervision becomes possible, the opportunity for deferred
adjudication has long passed."). 
24. See id.