

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-0034-10 & PD-0035-10

### THE STATE OF TEXAS

### v.

### CODY JOE POSEY, Appellee

### ON APPELLEE'S PETITIONS FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### LAMAR COUNTY

KEASLER, J., filed a concurring opinion in which HERVEY and COCHRAN, JJ., joined.

### CONCURRING OPINION

For different reasons than those of the majority, I would hold that a defendant must be eligible for regular community supervision under Article 42.12, Section 3 to be eligible for shock community supervision under Article 42.12, Section 6. Because an affirmative deadly weapon finding renders a defendant ineligible for judge-ordered community supervision under Article 42.12, Section3g, a defendant is therefore also ineligible for shock community supervision. I therefore join the majority in affirming the court of appeals's

judgment.

We give effect to the plain meaning of a statute's text.[1] "Where the statute is clear and unambiguous, the Legislature must be understood to mean what is has expressed, and it is not for the courts to add or subtract from such a statute."[2] There is a key exception to the plain meaning rule—when the application of the plain language would lead to absurd results, that language should not be applied literally.[3]

Article 42.12, Texas Code of Criminal Procedure, governs all aspects of community supervision.[4] Section 2 defines community supervision as "the placement of a defendant by a court under a continuum of programs and sanctions, with conditions imposed by a court for a specific period . . . ."[5] The imposition of community supervision suspends the execution of a sentence and is not a sentence itself.[6]

Section 3 addresses judge-ordered community supervision.[7] It allows a judge to suspend the imposition of a sentence after a conviction, guilty plea, or no contest plea.[8]

---

[1] *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[2] *Id*.

[3] *Id*.

[4] T EX. CODE CRIM. PROC. ANN. § 42.12 (Vernon 2003).

[5] *Id*.

[6] *Speth v. State*, 6 S.W.3d 530, 532 (Tex. Crim. App. 1999).

[7] T EX. CODE CRIM. PROC. ANN. § 42.12 § 3.

[8] T EX. CODE CRIM. PROC. ANN. § 42.12 § 3(a).

Within Section 3, subsection 3g provides limitations on judge-ordered supervision.[9] Subsection 3g states that the provisions of Section 3 permitting judge-ordered community supervision do not apply:

> (1) to a defendant adjudged guilty under [certain enumerated offenses].
>
> (2) to a defendant when it is shown that a deadly weapon . . . was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court . . . .[10]

Section 4 addresses jury-recommended community supervision.[11] It authorizes a jury to recommend that the judge suspend the imposition of a sentence of confinement and place the defendant on community supervision.[12] The judge must then follow the jury's recommendation.[13] Subsection 4(d) lists factors that render a defendant ineligible for jury-recommended community supervision, but does not include a deadly-weapon limitation under Section 3g.[14] Section 4(e) requires a defendant, before trial, to file "a written sworn motion with the judge that the defendant has not previously been convicted of a felony" to

---

[9] TEX. CODE CRIM. PROC. ANN. § 42.12 § 3g.

[10] *Id.*

[11] TEX. CODE CRIM. PROC. ANN. § 42.12 § 4.

[12] TEX. CODE CRIM. PROC. ANN. § 42.12 § 4(a).

[13] TEX. CODE CRIM. PROC. ANN. § 42.12 § 4(d).

[14] *Id.*

be eligible for jury-recommended community supervision.[15]

Finally, Section 6 is entitled "Continuing Court Jurisdiction in Felony Cases," which governs shock community supervision.[16] Section 6 authorizes a judge to suspend further execution of a sentence of confinement once it has begun and place a defendant on community supervision.[17] The judge may grant shock community supervision only if: (1) the defendant is otherwise eligible for community supervision under this article [42.12]; and (2) the defendant had never before been incarcerated in a penitentiary serving a sentence for a felony.[18] The judge may grant shock community supervision on his own motion, on the motion of the State's attorney, or on the written motion of the defendant.[19] The judge may order shock community supervision only within 180 days from the day the execution of the sentence of confinement begins.[20]

A Texas defendant has the right to have a jury assess punishment.[21] A jury found Cody Joe Posey guilty of criminally negligent homicide in two causes, both stemming from a fatal traffic accident. The jury further found that Posey used his vehicle as a deadly weapon

---

[15] TEX. CODE CRIM. PROC. ANN. § 42.12 § 4(e).

[16] TEX. CODE CRIM. PROC. ANN. § 42.12 § 6.

[17] TEX. CODE CRIM. PROC. ANN. § 42.12 § 6(a).

[18] TEX. CODE CRIM. PROC. ANN. § 42.12 § 6(a)(1)-(2).

[19] TEX. CODE CRIM. PROC. ANN. § 42.12 § 6(b).

[20] TEX. CODE CRIM. PROC. ANN. § 42.12 § 6(a).

[21] *Ivey v. State*, 277 S.W.3d 43, 47 (Tex. Crim. App. 2009).

during the accident. Posey elected to have the jury assess punishment, and the jury sentenced him to two years in prison, but recommended community supervision, which the judge imposed. The State later moved to revoke Posey's supervision and, after a hearing, the trial judge concluded that Posey had in fact violated the terms of his supervision. The judge then sentenced Posey to two years' confinement but noted that shock community supervision could be appropriate later. Posey timely filed a motion for shock community supervision in both causes, which the trial judge granted after a hearing. The judge signed two separate orders, each granting shock community supervision.

According to a plain reading of the statutes at issue, Section 6(a)(1)'s requirement that a defendant "is otherwise eligible under this article" refers to Section 3, governing judge-ordered community supervision. Section 6 specifically refers to the trial "judge" and to the "suspension of further execution of the sentence." The Legislature has specifically excluded the jury from granting or recommending shock community supervision. Section 6 comes into play only after a defendant has begun to serve a sentence, even if it was originally assessed by a jury. It gives the judge some discretion—within 180 days of from the execution of the sentence—to determine whether shock community supervision is appropriate rather than the continuation of the executed sentence. When a defendant like Posey elected to have the jury assess punishment, the jury fulfilled its duty when it assessed punishment. Additionally, the use of the present tense "is" in Section 6 is of significance. The word "is" indicates that shock community supervision eligibility is determined at the time that Section 6 can be

invoked.[22]  Thus, the timing limitations in Section 6 establish that shock community supervision eligibility is determined under Section 3. The phrase "is otherwise eligible under [42.12]" in Section 6(a)(1), therefore, does not refer to the eligibility requirements for jury-recommended community supervision in Section 4.

Any argument that Section 6(a)(1) refers to Article 42.12 in its entirety is undermined by its inclusion of Section 5, which governs deferred adjudication community supervision. Section 6 cannot legitimately be read to include Section 5. Unlike Section 3 community supervision, no guilt has been assessed, nor sentence imposed, under Section 5 deferred adjudication community supervision. Section 6(a)'s shock community supervision expressly contemplates the suspension of an executed sentence.[23]  Common sense therefore dictates that the phrase "eligibility for community supervision" in Section 6(a)(1) does not refer to being otherwise eligible for supervision under Section 5.

Additionally, Professors Dix and Dawson recognize that a redundancy with respect to the similar limitations outlined in Sections 6(a)(2) and Section 4(e) militate against reading Section 6(a)(1) to include jury-recommended community supervision:

---

[22] *See* TEX. GOV'T CODE ANN. § 311.012(a) ("Words in the present tense include the future tense."); *cf. Ex parte Noyola*, 215 S.W.3d 862, 867 (Tex. Crim. App. 2007) ("By incorporating Section 508.149(a) by reference, Section 508.283(c) invokes the version of Section 508.149(a) in effect when the inmate's parole or mandatory supervision is revoked.").

[23]  *See* 43A George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 39.63 (2d ed. 2001) (observing that "the point in the process when shock community supervision becomes possible, the opportunity for deferred adjudication has long passed.").

The legislature undoubtedly did not intend to include jury eligibility, because it added the independent requirement of eligibility that the defendant has never before been incarcerated in a penitentiary serving a sentence for a felony. That requirement would be redundant because a jury could never give community supervision to a defendant who had previously served a prison sentence.[24]

Finally, holding that the initial selection between a bench or jury trial should determine a defendant's subsequent eligibility for shock community supervision would discourage plea bargaining and, consequently, pleas of guilty and no contest. Defendants who could be or are ineligible for community supervision under Section 3 may select a jury trial for the sole purpose of remaining eligible for shock community supervision.

DATE FILED: January 12, 2011
PUBLISH

---

[24] *See id.*