TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN









NO. 03-04-00353-CR






Stephen Dwayne Cannada, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT

NO. 2040120, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N 



 A jury found appellant Stephen Dwayne Cannada guilty of delivering a simulated
controlled substance. See Tex. Health & Safety Code Ann. § 482.002(a)(2) (West 2003). Cannada
challenges the sufficiency of the evidence supporting the verdict. We affirm the judgment of
conviction. 


BACKGROUND

 During the night of January 8, 2004, the Austin Police Department conducted an
undercover narcotics operation around Fifth, Sixth and Sabine streets, an area targeted by the APD
based on the prevalence of crack cocaine dealing. Cannada approached undercover officer Mark
Luera and asked if he was "looking." When Luera responded that he was, Cannada said he would
"hook up" the officer. Cannada told Luera to follow him, stating, "I've got it around the corner." 
Luera refused to go with Cannada. Cannada eventually walked around a corner where he conferred
with two men. Cannada returned carrying an object in his hand and asked Luera for twenty dollars. 
Luera gave Cannada the money and Cannada handed the officer a small object wrapped in either
white cellophane or a paper towel. Luera asked Cannada if "it" was "good," to which Cannada
responded affirmatively. Luera then signaled "takedown" officers, and Cannada was arrested. 

 Forensic tests performed on the substance Cannada sold to Luera revealed that it was
not a controlled substance after all, but an ordinary rock, possibly a piece of limestone. Cannada was
indicted and subsequently convicted of delivery of a simulated controlled substance. See id. The
district court sentenced Cannada to eighteen months imprisonment. This appeal ensued.


DISCUSSION


 Cannada brings a single point of error contending that the evidence was insufficient
to support a finding that he was guilty of delivering a simulated controlled substance to Luera. We
will construe Cannada's point to challenge both the legal and factual sufficiency of the evidence. 


Standard of review

 When there is a challenge to the legal sufficiency of the evidence to sustain a criminal
conviction, we consider whether a rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim.
App. 2005); Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). We review all the
evidence in the light most favorable to the verdict, assume that the trier of fact resolved conflicts in
the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the
verdict. Griffin, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). It is not necessary that every fact
point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted
by the combined and cumulative force of all the incriminating circumstances. Johnson v. State, 871
S.W.2d 183, 186 (Tex. Crim. App. 1993). We consider even erroneously admitted evidence. Id. 
 In a factual sufficiency review, we consider all the evidence equally, including the
testimony of defense witnesses and the existence of alternative hypotheses. Orona v. State, 836
S.W.2d 319, 321 (Tex. App.--Austin 1992, no pet.). We consider all the evidence, rightly or
wrongly admitted. See Camarillo v. State, 82 S.W.3d 529, 537 (Tex. App.--Austin 2002, no pet.). 
Due deference must be accorded the fact-finder's determinations, particularly those concerning the
weight and credibility of the evidence, and we may disagree with the result only to prevent a
manifest injustice. Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). We will deem the
evidence factually insufficient to sustain the conviction if the proof of guilt is too weak or the
contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. Zuniga, 144
S.W.3d at 484-85; see Johnson, 23 S.W.3d at 11.


Application

 Cannada was convicted under section 482.002(2) of the health and safety code, which
provides:


(a) A person commits an offense if the person knowingly or intentionally . . .
delivers a simulated controlled substance and the person:


. . .


(2) represents the substance to be a controlled substance in a manner that would
lead a reasonable person to believe that the substance is a controlled substance.


. . .



Tex. Health & Safety Code Ann. § 482.002(a)(2) (emphasis added). Cannada appears to challenge
the sufficiency of the evidence that Cannada (1) "delivered" a (2) substance that was represented to
be a "simulated controlled substance." 


 Delivery


 Cannada emphasizes that after he was arrested, the APD did not find the $20 buy
money in his possession. However, Officer Luera testified that he did give Cannada $20 in exchange
for what was represented to be a rock of crack cocaine. Officer Christopher Conchin, one of the
arresting officers, added that it is not uncommon in undercover arrests to be unable to find the money
given to a dealer. 

 Moreover, delivery under section 482.002(a)(2) can be proven without establishing
that Luera actually paid Cannada the $20. The definition of "deliver" in chapter 482 of the health
and safety code includes offering to sell a simulated controlled substance. In addition to testifying
that money actually changed hands, Luera testified that Cannada offered him the substance in
exchange for $20. 

 Considering all the evidence in a neutral light, a rational trier of fact could have found
beyond a reasonable doubt that Cannada acted with intent to offer to sell a simulated controlled
substance to Luera. See Vodochodsky, 158 S.W.3d at 509; Zuniga, 144 S.W.3d at 484-85. 
Moreover, proof of guilt is not so weak, nor the contrary evidence so strong, as to render the
evidence factually insufficient. See Zuniga, 144 S.W.3d at 484-85; Johnson, 23 S.W.3d at 9. The
evidence is legally and factually sufficient to support the jury's finding on the element of delivery. 


 Representing the substance to be a simulated controlled substance


 Cannada suggests that he could not be convicted of delivering a simulated controlled
substance because there is no evidence that he ever explicitly represented that the substance in
question was crack cocaine, but employed only the slang term "rock." See Jenkins v. State, 820
S.W.2d 178, 179 (Tex. Crim. App. 1991); Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App.
1991). (1) Jenkins and Boykin, however, construed subsection (1) of health and safety code section
482.002(a), which requires proof that a defendant "expressly represents the substance to be a
controlled substance." See Tex. Health & Safety Code Ann. § 482.002(a)(1) (West 2003). Cannada,
by contrast, was indicted under subsection (2) of section 482.002(a), which requires proof only that
the defendant "represents the substance to be a controlled substance in a manner that would lead a
reasonable person to believe that the substance is a controlled substance." The health and safety
code further elaborates: 


(a) In determining whether a person has represented a simulated controlled
substance to be a controlled substance in a manner that would lead a reasonable
person to believe the substance was a controlled substance, a court may
consider, in addition to all other logically relevant factors, whether:

 

 (1) the simulated controlled substance was packaged in a manner normally
used for the delivery of a controlled substance; 


 (2) the delivery or intended delivery included an exchange of or demand for
property as consideration for delivery of the substance and the amount of
the consideration was substantially in excess of the reasonable value of the
simulated controlled substance; and


 (3) the physical appearance of the finished product containing the substance
was substantially identical to a controlled substance.



Tex. Health & Safety Code Ann. § 482.003 (West 2003).


 Luera testified that Cannada inquired whether he was "looking." Luera, who has been
with the police department's street response unit for one and one-half years, explained that "looking"
is street terminology for, "Are you looking to buy crack?" He added that Cannada's promise to
"hook [him] up" usually means, "I'll take care of you. I'll give you crack. If you're looking to buy,
I'm the one that's going to supply it." Sergeant Robert McCowan, who had been involved in
hundreds of prior drug arrests, also testified. When asked what language is typically used during a
purchase of crack cocaine, McCowan responded, "It can be anything from just simply eye contact. 
I've made a lot of buys just - you look at a guy and a guy looks at you and you both know what's
going on. So anywhere from there, all the way up to ask if - you ask them if they have a 20. You
ask them if they're holding. They'll ask you if you're looking. It's - nobody says, do you have any
crack cocaine?" 

 Luera described the substance delivered to him by Cannada as being wrapped in white
cellophane or a paper towel. Luera indicated that this is common packaging for crack cocaine. This
observation was echoed by Gloria Rodriquez, a forensic drug chemist for APD for thirteen years,
who tests crack cocaine on a daily basis as part of her job responsibilities. Rodriguez testified that
the rock Cannada delivered to Luera resembled a crack rock, and that under the circumstances it was
reasonable for Luera to believe he had been given a rock of crack cocaine. 

 Luera further testified that Cannada asked him for the twenty dollars saying that he,
Cannada, would give Luera the rock. McCowan stated his undercover officers usually pay twenty
dollars for one rock of crack cocaine. 

 Considering the foregoing evidence, including the packaging, the rock's similar
appearance to crack cocaine, and the fact that Cannada sold it to Luera in a manner typical of a crack
cocaine deal, see Tex. Health & Safety Code Ann. § 482.003, we conclude that the evidence was
legally and factually sufficient to support the jury's verdict that Cannada knowingly or intentionally
delivered the rock to Luera in a manner that would have led a reasonable person to believe that it was
crack cocaine. Anderson v. State, 895 S.W.2d 756, 758 (Tex. App.--Texarkana 1994, no pet.). For
the same reasons, we conclude that the evidence is sufficient to support the finding that the rock
Cannada gave Luera was a "simulated controlled substance." See Tex. Health & Safety Code Ann.
§ 482.001(4) (West 2003) (defining "simulated controlled substance" under Chapter 482 as a
"substance that is purported to be a controlled substance, but is chemically different from the
controlled substance it is purported to be."). 


CONCLUSION

 Having overruled Cannada's sole point of error, we affirm the district court's
judgment of conviction.



 __________________________________________

 Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed: January 12, 2006

Do Not Publish
1. In his appellate brief, Cannada claims that he was actually "harassing Officer Luera because
they were present in the area."