IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. PD-0826-06, PD-0827-06, PD-0828-06, PD-0829-06,


PD-0830-06, PD-0831-06, PD-0832-06, PD-0833-06






THE STATE OF TEXAS



v.



JOHN DOMINICK COLYANDRO, JAMES WALTER ELLIS, and 


THOMAS DALE DELAY, Appellees





ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


TRAVIS COUNTY






 Cochran, J., filed a dissenting opinion, in which Meyers, Johnson and
Holcomb, JJ., joined.


O P I N I O N 



 I respectfully dissent.

 In this case we are asked if any and all felony offenses, whether defined in the Penal
Code or in some other Texas statute, may form the basis of a conspiracy charge under Section
15.02 of the Penal Code. Were it not for two wayward 1976 and 1977 opinions written by
Commissioner Davis over the strong dissent of Judge Douglas, the answer to this question
would be obvious. Yes, any felony offense is subject to the Penal Code conspiracy provision. 
Thus, a person may be prosecuted for conspiring to commit any felony offense, whether that
felony is defined in the Penal Code or elsewhere in Texas law. The plain language of the
conspiracy statute requires this result. The structure, legislative intent, and history of the 1974
Penal Code all require this result. Common sense requires this result. Public policy requires
this result. Only two poorly reasoned opinions from the mid 1970s, Moore v. State (1) and
Baker v. State, (2) stand in the way of reaching the right result. The Third Court of Appeals, in
its opinion in the present cases, invited us to re-visit the reasoning of those two cases and
suggested that we should overrule them. (3) I would accept that invitation and overrule Moore and
Baker. Not only are they poorly reasoned, but they carry the potential to cause untold
mischief to many other provisions in the Penal Code.

A. The Plain Language of the Penal Code Conspiracy Statute.

 In construing the meaning of any statute, we look first to the plain language of that
statute. (4) This Court's interpretation of statutes must "seek to effectuate the 'collective' intent
or purpose of the legislators who enacted the legislation." (5) In Boykin, we established that if
the literal text of the statute is clear and unambiguous, we must ordinarily give effect to that
plain meaning. (6) The first rule of statutory construction is to presume that the legislature meant
what it said and said what it meant. (7) On its face, the conspiracy statute plainly applies to all
felony offenses.

 Section 15.02 of the Penal Code defines the criminal offense of conspiracy:

 (a) A person commits criminal conspiracy if, with the intent that a felony be
committed:
 (1) he agrees with one or more persons that they or one or more of them
engage in conduct that would constitute the offense; and
(2) he or one or more of them performs an overt act in pursuance of the
agreement. (8)


There is absolutely nothing in the plain language of this statute that states or suggests that the
Legislature really meant "a felony defined in the Penal Code" when it said "a felony" in
defining the offense of conspiracy. In normal English usage, the phrase "a felony" means "any
felony." Under Boykin, our statutory analysis should end right there.

 Is there anything else in the Penal Code that states or suggests that the phrase "a felony"
in the conspiracy statute really means "a felony defined in the Penal Code"? No, quite the
reverse. Section 1.07 of the Penal Code, the provision that sets out the definitions of words
that are used in the Penal Code, states:

 (a) In this Code:

 (23) "Felony" means an offense so designated by law or punishable by death
or confinement in a penitentiary. (9)


Under normal rules of English construction, any time the word "felony" is used in the Penal
Code, it means any offense that is titled or listed as a "felony" regardless of whether that
felony is defined in the Penal Code or some other statute. Once again, under Boykin, our
statutory analysis should end right there.

 The Election Code provisions dealing with illegal contributions that Messieurs DeLay,
Colyandro, and Ellis are charged with having conspired to violate are all third-degree
felonies. (10) It would seem quite obvious, then, that they may be prosecuted for the offense of
conspiracy to commit the third-degree felony of violating the illegal contributions provisions
of the Election Code. That should be the end of the matter.

B. The Structure, Legislative Intent, and History of the Penal Code Conspiracy
Statute.


 Messieurs Delay, Colyandro, and Ellis argue (as did Commissioner Davis in Moore and
Baker) that we cannot follow the plain language of the conspiracy statute or the definition of
"a felony" in section 1.07 because section 1.03(b) of the Penal Code forbids us from using
felonies defined outside the Penal Code as the basis for a conspiracy offense. Section 1.03(b)
says no such thing. Nor does it imply any such thing. But to counter that argument one must
examine the basic structure of the Penal Code.

 The Penal Code is divided into eleven titles. (11) The first three titles set out general
provisions which apply to any and all criminal offenses. (12) The rest of the titles-Title 4 through
Title 11-define specific criminal offenses. For example, the offense of conspiracy is defined
in Title 4; the offense of capital murder is defined in Title 5; the offense of bigamy is defined
in Title 6; and so forth. Thus, there are two entirely different portions of the Penal Code: 
generalities in the first three titles, specific offenses in the rest.

 Section 1.03 of the Penal Code is captioned "Effect of Code." Subsection (b) reads:

 The provisions of Titles 1, 2, and 3 apply to offenses defined by other laws,
unless the statute defining the offense provides otherwise; however, the
punishment affixed to an offense defined outside this code shall be applicable
unless the punishment is classified in accordance with this code. (13)


This subsection ensures that the general statutory provisions of the Penal Code, such as the
defenses to or justifications excluding criminal responsibility (self-defense, insanity,
necessity, duress, etc.), party liability for criminal offenses (accomplice liability), and
criminal responsibility of a corporation, apply not only to the criminal offenses defined within
the Penal Code but to all criminal offenses defined in other Texas statutes. It is an "export"
provision: one can cut and paste these three titles onto each and every criminal offense
defined outside the Penal Code unless the extra-Penal Code crime statute specifically says
otherwise. (14) There is no need to repeat all of these general principles in each and every code
that defines a criminal offense. Just export and overlay these three titles onto those
provisions.

 Messieurs Delay, Colyandro, and Ellis argue that because section 1.03(b) does not
mention Title 4, in which the crime of conspiracy is defined, that crime of conspiracy cannot
be "exported" and applied to other crimes defined outside the Penal Code. Well, of course not. 
The crime of conspiracy is a distinct and specific criminal offense, just like murder, burglary,
kidnaping, theft, and so forth. It is not a part of the general provisions of the Penal Code
applicable to all crimes; it is a specific crime itself. 

 It would make no sense to say, in section 1.03(b), that the general provisions of Titles
1, 2, and 3, as well as Titles 4-11 defining specific crimes, apply to offenses defined by other
laws. Commissioner Davis back in 1976 and 1977 made a grievous, but understandable,
mistake. In Baker, he apparently thought that the specific crime of conspiracy was really a
general principle provision (15) that could, if the Legislature had so desired, float around and
attach itself to other crimes defined outside the Penal Code. It cannot. The crime of
conspiracy, like the crimes of murder, burglary, and kidnaping, is firmly anchored in the Penal
Code. One cannot "export" it to other crimes. 

 But what the conspiracy statute explicitly requires one to do is "import" any
felony-whether defined as a felony inside or outside the Penal Code-into the crime of
conspiracy. When a crime defined in the Penal Code has, as part of its basis, "a felony," then,
under the explicit definition of a "felony" under section 1.07(a)(23), one may cut and paste any
felony crime defined in any Texas statute into that specific Penal Code offense. That is what
section 1.07(a)(23) requires. For example, the crime of conspiracy requires that the person
act "with intent that a felony be committed," that he agrees with at least one other person that
one of them will commit the felony offense, and that one of them performs an overt act in
furtherance of their agreement. (16) As another example, the crime of felony-murder requires
the person to commit or attempt to commit a felony (any felony other than manslaughter) and
in the course of and in furtherance of committing that felony commit an act clearly dangerous
to human life that causes the death of a person. (17) Another example: burglary is the crime of
entering another's home without the consent of the homeowner and with the intent to commit
a felony (any felony), theft, or assault. (18) One last example: (19) aggravated kidnaping is the crime
of abducting a person with the intent to "facilitate the commission of a felony or flight after
the attempt or commission of a felony." (20) 

 Following the logic of Baker, it would not be a crime to abduct a person with the intent
to facilitate the commission of a felony that is defined outside the Penal Code because Title
5 (which contains the definition of the crime of aggravated kidnaping) is not mentioned in
section 1.03(b) as being applicable to offenses defined outside the Penal Code. This is an
absurd result and surely not one intended by the Legislature when it enacted the 1974 Penal
Code. In all of these examples, the Legislature obviously meant "any felony" when it used the
phrase "a felony." Especially since the definition of a "felony" in section 1.07(a)(23) says
exactly that. How much clearer can or should the Legislature be? Section 1.03(b) does not
reference any of the Penal Code titles in which these offenses are defined as applying outside
the Penal Code and indeed these offenses do not apply outside the Penal Code. But felony
offenses that are defined outside the Penal Code surely may be imported into the specific
Penal Code crimes that require the commission of "a felony" as part of that crime's definition.

 Does the history of the 1974 Penal Code support the notion that only those felonies
defined within the Penal Code may be the basis for the crime of conspiracy? No. The
Committee Comment to the Final Draft of the Proposed Texas Penal Code explained that the
purpose of section 15.02, defining the crime of conspiracy, was to clarify the existing law
against criminal conspiracy. It stated:

 Criminal conspiracy, a common-law crime, has become firmly
established as an offense that serves dual roles in modern criminal
jurisprudence. Functioning as an inchoate offense, criminal conspiracy fixes the
point of legal intervention at agreement to commit a crime coupled with an overt
act. Thus, it reaches further back into preparatory conduct than criminal attempt,
Section 15.01, but not as far back as criminal solicitation, Section 15.03. In its
second role criminal conspiracy provides a means of striking against the special
danger incident to group criminal activity and facilitates prosecution of the
group by providing extraordinary evidentiary and procedural advantages. Section
15.02 is essentially a clarification of the present Texas law of conspiracy,
Penal Code arts. 1622-1629, emphasizing the inchoate aspect of the offense
without interfering with the procedural and evidentiary advantages of the group
prosecution aspect of the offense. (21)


Under the common law, the crime of conspiracy applied to any criminal offense, felony or
misdemeanor. (22) Indeed, the general conspiracy law in Texas had been on the books since 1884,
but it applied only to felony offenses: "The agreement to come within the definition of
conspiracy must be to commit one or more of the following offenses, to-wit: Murder,
robbery, arson, burglary, rape or any other offense of the grade of felony." (23) And, at least as
far back as the 1925 Penal Code, the offense of illegal contributions made by corporations was
punishable as a felony. (24) This provision was transferred to the Election Code of 1951. (25) If the
crime of making an illegal corporate political contribution was amenable to forming the basis
of a conspiracy offense up until the enactment of the 1974 Penal Code, and if the 1974 Penal
Code merely clarified the then-existing law of conspiracy, it defies common sense to think
that the Legislature intended to wipe out that offense when it enacted the general crime of
conspiracy in section 15.02. 

C. Common Sense and Public Policy Considerations.

 Is there any common-sense reason to think that the crime of conspiracy does or should
apply only to offenses defined within the Penal Code itself? If the purpose of the conspiracy
law is to deter and punish those who agree to commit a serious crime and take overt steps to
accomplish that crime, is there any reason to separate out serious offenses defined within the
Penal Code from serious offenses defined outside the Penal Code and declare that one can be
prosecuted for conspiring to commit Penal Code felonies but not extra-Penal Code felonies? (26) 
Are some felonies more felonious than other felonies? More deserving of being deterred and
punished before their actual commission? Or are felonies defined in the Penal Code
especially heinous "felonies-on-steroids," while their brethren defined outside the Penal Code
are puny, half-pint felonies unworthy of being the subject of the crime of conspiracy? I do not think so. There is certainly no reason in either the Penal Code or other
legislative enactments to believe that the Texas Legislature has categorized felonies into first-class Penal Code felonies and second-class extra-Penal Code felonies with the first group
capable of being the basis for the crime of conspiracy while the second group is not.

 One might argue that if the Legislature thought that these extra-Penal Code offenses
were "real" felonies deserving of being used as the basis of a conspiracy, felony-murder,
burglary, kidnaping, hindering apprehension, or other Penal Code crimes that reference "a
felony," then it should have placed them in the Penal Code itself. Maybe it should create a
Title 12 section of the Penal Code to contain this miscellany of felony offenses described in
twenty or more other codes. Good public policy suggests, however, that these extra-Penal
Code offenses are defined in those separate codes because people who are most directly
affected by those separate codes would be most likely to find and read them and then conform
their conduct to avoid these crimes. For example, the Agriculture Code states that it is a
felony for anyone to operate a public grain warehouse without first obtaining a license. (27) This
offense is defined in Chapter 14 titled "Regulation of Public Grain Warehouse Operators." 
This is the proper place for it to be located as it applies only to those who operate public grain
warehouses and they are the persons most likely to read this portion of the Agriculture Code
and be placed on notice of the existence of this offense. It is most unlikely to think that public
grain warehouse operators would go flipping through the Penal Code to see if that code
contained any penal provisions relating to their business. The same logic applies to the felony
offense of exhibiting a firearm that interferes with the normal use of a school building or bus
that is contained in the Education Code, (28) or the felony offense of tampering with an oil or gas
well that is contained in the Natural Resources Code, (29) or the felony offense of signing a false
statement or affidavit dealing with the payment of taxes on car sales that is set out in the
Transportation Code. (30) 

 Messieurs DeLay, Colyandro, and Ellis would have us believe that the Legislature
intended to make it perfectly legal to conspire to commit all of these felonies, but illegal only
to actually carry them out. On the contrary, it strains credulity to think that the Legislature
intended that persons who conspired to commit these felonies are immune from prosecution
for that conspiracy. In fact, some extra-Penal Code offenses are particularly susceptible to
the crime of conspiracy and are doubly dangerous because of it. Take, for example, Mr. Big,
a drug cartel kingpin who never sullies his own hands with the ten kilos of cocaine that he
orders flown across the border into Texas. Instead, he conspires with his henchmen to deliver
the goods while he is happily ensconced in his River Oaks mansion. Did the 1974 Penal Code
really intend that he be immune from prosecution for the Penal Code offense of conspiracy
to deliver cocaine merely because the offense of delivery of cocaine was defined outside the
Penal Code? The Legislature intended that the little mule who actually delivers a kilo of
cocaine may go to prison for life while the kingpin who conspired (unsuccessfully, for that is
what an inchoate crime is-one that is not completed) to get the cocaine into the hands of the
mule is immune from prosecution? I think not. (31) 

 Thus, both common sense and good public policy lead to the conclusion that sections
1.07(a)(23) and 15.02 state that "a felony" is "any felony" regardless of whether it is defined
in the Penal Code or in some other statute and that all such felonies may form the basis of a
conspiracy offense. And if all such felonies are "real" felonies, so is the Election Code felony
of making an illegal contribution and it, too, may form the basis of a conspiracy offense. Thus
it was before the 1974 Penal Code was enacted, and thus it should remain absent some
legislative action to the contrary.

D. Moore and Baker Are the Sole Support for the Conclusion That a Felony Defined
in the Election Code Cannot Be the Basis for a Conspiracy Offense under the
Penal Code.

 

 Messieurs DeLay, Colyandro, and Ellis rely almost exclusively upon two 1976 and
1977 cases. These cases should be re-examined. In the first, Moore v. State, (32) Commissioner
Davis stated that the specific offense of "criminal attempt" which is defined in section 15.01
of the Penal Code did not apply to the felony offense of obtaining a controlled substance by
fraud which was defined in The Controlled Substances Act. (33) He recited Section 1.03(b) which
stated that "the provisions of Titles 1, 2, and 3 of this code apply to offenses defined by other
laws, unless the statute defining the offense provides otherwise[.]" (34) And he then reasoned,
"The general attempt provisions of Sec. 15.01, supra, are contained in Title 4 of the Penal Code
and thus Sec. 1.03(b), supra does not apply to Sec. 15.01, supra." (35) But this is a non sequitur. 
Why would any specific crime defined in the Penal Code (or the title in which it is defined)
be mentioned in Section 1.03(b)? Only the general principles of criminal law are exported to
extra-Penal Code offenses, not specific Penal Code crimes. None of the offenses defined in
the Penal Code are mentioned in Section 1.03(b), but that does not mean that when they require
the commission of "a felony" as a part of their definition, that felonies defined outside the
Penal Code do not qualify as felonies for purposes of those Penal Code offenses. This was
precisely the point made by Judge Douglas in his dissent in Moore. He stated that "Section
15.01(a) is not limited to offenses defined in the code. It states that one must intend to
commit 'an offense' to come within the ambit of the attempt provisions." (36) He noted the
absurdity of the logic:

 It appears that the Legislature intended that an attempt to commit an
offense involved in the Controlled Substance Act would not constitute an
offense while attempts at all other crimes within the Penal Code would
constitute offenses. Such a conclusion would contravene Section 1.05(a) of the
Penal Code[.] (37) 


Judge Douglas stated that this Court should "effectuate the full legislative intent. We should
find that the Penal Code and the Controlled Substances Act are complementary and have no
difficulty in construing the statutes together. Accordingly, we should hold that the general
attempt provisions set forth in Section 15.01, supra, apply to the Controlled Substances Act." (38) 
Alas, this Court approved Commissioner Davis's opinion rather than that of Judge Douglas. (39) 
And then the trouble snowballed. Six months later, Commissioner Davis addressed the
applicability of the crime of conspiracy under Section 15.02 to the Controlled Substance Act. 
In Baker v. State, (40) Commissioner Davis noted that the defendant did not file any brief on
appeal, but that he had, on his own, found "fundamental error which we must review in the
interest of justice." (41) Commissioner Davis posed the issue thus: "The question before us is
whether the criminal conspiracy provisions of the new Texas Penal Code apply to the
Controlled Substances Act. We hold they do not." (42) He posed the wrong issue. He should
have posed it thus: "The question before us is whether a felony defined in the Controlled
Substances Act qualifies as "a felony" for purposes of the crime of conspiracy." The crime
of conspiracy does not "apply" to other crimes, just as the crime of felony-murder does not
"apply" to other crimes. But any felony crime, whether defined inside or outside of the Penal
Code, may form the basis for the crime of conspiracy (or the crime of felony-murder,
burglary, and so forth). Commissioner Davis was simply mistaken. He was thinking that
attempts and conspiracy were general legal principles rather than specific penal offenses
complete within themselves. It is no crime to be mistaken, but this Court, like Judge Douglas,
should recognize that mistake. We now have the opportunity to correct it, and we should.

 The Legislature obviously did not approve of Commissioner Davis's opinions in either
Moore or Baker. It reacted by amending the Controlled Substances Act to explicitly provide
that Title 4 of the Penal Code did apply to the Controlled Substances Act. (43) But it did so based
on Commissioner Davis's faulty logic that attempts and conspiracy were general legal
principles, like those principles set out in Titles 1, 2, and 3 of the Penal Code, rather than
discrete criminal offenses. And down through the years it, like this Court, has perpetuated that
original mistake of logic by enacting various piece-meal conspiracy provisions in some of the
other Texas codes. And, by declining to accept the court of appeals's urgent invitation to
revisit the mistaken logic in Moore and Baker, this Court further perpetuates that original
mistake. Because this Court made the original mistake, we should repair it ourselves, not foist
that responsibility off on the Legislature. 

 Unfortunately, we compound the original error by ignoring the explicit language of
section 1.07(a)(23) that defines the phrase "a felony" for purposes of the Penal Code as "an
offense so designated by law or punishable by death or confinement in a penitentiary." (44) Thus,
even if the Legislature should take the hint and explicitly amend section 1.03(b) to state "The
provisions of Titles 1, 2, and 3 of this Code and the offenses defined in Title 4, apply to
offenses defined by other laws . . . ," we would still be left with the problem of having
concluded that "a felony" for purposes of the Penal Code means only those felonies that are
defined within the Penal Code. 

 Thus, one true legislative fix might be: "The provisions of Title 1, 2, and 3 of this Code
and the offenses defined in Titles 4-11, apply to offenses defined by other laws . . ." But this
"fix" is illogical and may have unintended consequences of its own. (45) Another legislative fix
might be to amend the definition of "felony" in Section 1.07(a)(23) to read: "'Felony' means
an offense so designated by law or punishable by death or confinement in a penitentiary. It
includes any felony defined in this code or any other Texas code, and it applies to all offenses
defined in all titles within this code, including Title 4." If this seems redundant, it is, but it is
necessary given our peculiar interpretation of the present definition.

 The citizens of Texas would be well served if this Court admitted the mistake of logic
in Moore and Baker and overturned them. Because the Court declines to do so, I respectfully
dissent.

Filed: June 27, 2007

Publish
1. 545 S.W.2d 140 (Tex. Crim. App. 1976).
2. 547 S.W.2d 627 (Tex. Crim. App. 1977).
3. State v. DeLay, 208 S.W.3d 603, 607 (Tex. App. - Austin 2006). The court of appeals
stated:

 As an intermediate appellate court, we lack the authority to overrule an opinion of the
court of criminal appeals. It is the prerogative of the court of criminal appeals alone to
overrule its interpretation of a statute. Baker appears to be based on questionable
reasoning and is arguably in conflict with the history of the criminal conspiracy offense in
Texas as well as the growing legislative trend to propagate felony offenses throughout
the various statutory codes. The court of criminal appeals may want to revisit its
opinion in Baker. But until that time, Baker is the law and we are not free to disregard
it.

Id. (citations omitted).
4. Boykin v. State, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991).
5. Id. at 785.
6. Id. 
7. Id. ("Where the statute is clear and unambiguous, the Legislature must be understood to mean
what it has expressed, and it is not for the courts to add or subtract from such a statute."); see also
Seals v. State, 187 S.W.3d 417, 420 (Tex. Crim. App. 2005); Getts v. State, 155 S.W.3d 153, 155
(Tex. Crim. App. 2005) (stating that Boykin "instructs us to first 'focus our attention on the literal text
of the statute in question' because 'the text of the statute is the law.'").
8. Tex. Penal Code § 15.02(a).
9. Id. § 1.07(a)(23).
10. Tex. Elec. Code § 253.003 (e) (third-degree felony to make or accept an unlawful political
contribution in violation of Subchapter D which prohibits certain contributions by corporations or labor
unions); Tex. Elec. Code § 253.094(c) (third-degree felony for a corporation or labor union to make
an unauthorized political contribution); Tex. Elec. Code § 253.104 (third-degree felony for a
corporation or labor union to knowingly make an otherwise authorized political contribution in violation
of 60-days before election rule).
11. Title 1 (Introductory Provisions); Title 2 (General Principles of Criminal Responsibility); Title
3 (Punishments); Title 4 (Inchoate Offenses); Title 5 (Offenses Against the Person); Title 6 (Offenses
Against the Family); Title 7 (Offenses Against Property); Title 8 (Offenses Against Public
Administration); Title 9 (Offenses Against Public Order and Decency); Title 10 (Offenses Against
Public Health, Safety, and Morals); Title 11 (Organized Crime).
12. For example, Title 1 contains chapters dealing with the general provisions of the code, the
burden of proof, and multiple prosecutions. Title 2 contains chapters dealing with culpability generally,
criminal responsibility for the conduct of another, general defenses to criminal responsibility, and
justifications excluding criminal responsibility. Title 3 sets out the punishments that apply to criminal
offenses.
13. Tex. Penal Code § 1.03(b).
14. The Practice Commentary to Section 1.03 of the 1974 Penal Code states:

 The general principles of penal law, for the first time and for the most part
comprehensively treated and codified by this code, are designed to provide a
framework for the interpretation and application of every law now in effect or later
enacted that employs a penal sanction, whether or not it is located in this code. 

Tex. Penal Code § 1.03, Practice Commentary.
15. In Baker, Commissioner Davis may have confused the distinct crime of conspiracy (defined
in section 15.02) with the concept of criminal responsibility based upon conspiracy complicity (which is
set out in section 7.02(b)). Conspiratorial liability is, of course, contained within Title 2, and it is one of
those general provisions of the Penal Code that, under the explicit wording of section 1.03(b), applies
to all criminal offenses, regardless of whether those offenses are contained in the Penal Code or another
Texas law. But there is an enormous difference between criminal responsibility for the conduct of
another under general party liability principles and the commission of the distinct crime of conspiracy. 
They frequently are, but should not be, confused.
16. Tex. Penal Code § 15.02(a).
17. Tex. Penal Code § 19.02(b)(3).
18. Tex. Penal Code § 30.02(a)(1).
19. Other Penal Code provisions that refer to "a felony" as part of the definition of the crime
include enticing a child (Tex. Penal Code § 25.04(b)); burglary of a motor vehicle (Tex. Penal
Code § 30.04(a)); coercion of a public servant (Tex. Penal Code § 36.03(b)); hindering
apprehension (Tex. Penal Code § 38.05(c)); escape (Tex. Penal Code § 38.06(c)(1)); bail jumping
(Tex. Penal Code § 38.10(f)).
20. Tex. Penal Code § 20.04(a)(3).
21. Texas Penal Code, A Proposed Revision, Final Draft, October 1970, § 15.02,
committee comment (emphasis added).
22. See Charles P. Bubany, The Texas Penal Code of 1974, 28 Sw. L. J. 292, 327 & n. 193
(1974) (stating that section 15.02 "is limited to conspiracies that contemplate the commission of a
felony" and noting that "[a]t common law, a combination for the purpose of committing any crime or a
lawful act by unlawful means could be a conspiracy. Prior Texas law contained the felony limitation
with certain exceptions").
23. Texas Penal Code art. 957 (1884).
24. Texas Penal Code art. 213 (1925) (prohibiting political contributions by any bank or
corporation "for the purpose of aiding or defeating the election of any candidate for the office of
Representative in Congress, or Presidential or Vice-Presidential Electors from this State, or any
candidate for any State, district, county or precinct office in this State, or the success or defeat of any
political measure submitted to a vote of the people of this State"; punishment included imprisonment "in
the penitentiary not less than two nor more than five years").
25. Texas Election Code art. 213 (Texas Sess. Laws 1951, 52
nd Reg. Leg. ch. 492, 1097,
1190 (1951)) (stating that corporations may not give, lend, or pay any money "directly or indirectly to
any candidate, campaign manager, assistant campaign manager, or any other person, for the purpose of
aiding or defeating the election of any candidate or of aiding or defeating the approval of any political
measure submitted to a vote of the people of this State or any subdivision thereof"; punishment included
imprisonment of not less than one nor more than five years).
26. As the court of appeals aptly noted in its opinion in this case, 

 the legislature has created dozens of felony offenses contained in at least twenty
statutory codes. In light of the historically broad application of Texas's criminal
conspiracy offense, we find it unlikely that the legislature would have intended to
eliminate criminal liability for conspiracy in such a panoply of felony offenses.

208 S.W.3d at 606. The court then listed some of the codes that contain felony offenses: Tex. Agric.
Code § 14.072(b); Tex. Alco. Bev. Code § 54.12; Tex. Bus. & Com. Code § 35.54(d); Tex.
Educ. Code § 37.125(b); Tex. Elec. Code § 253.094(c); Tex. Fam. Code § 261.107(a); Tex. Fin.
Code § 33.108(c); Tex. Gov't Code § 302.034; Tex. Health & Safety Code § 481.141(b); Tex.
Hum. Res. Code § 35.012(b); Tex. Ins. Code § 101.106; Tex. Lab. Code § 418.001(b); Tex. Loc.
Gov't Code § 392.043(d); Tex. Nat. Res. Code § 85.389(b); Tex. Occ. Code § 204.352(b); Tex.
Parks & Wild. Code § 66.119(d); Tex. Tax Code § 152.101(b); Tex. Transp. Code §
501.151(c); Tex. Util. Code § 105.024(b); Tex. Water Code § 7.155(c).
27. Tex. Agric. Code § 14.072(b).
28. Tex. Educ. Code § 37.125(b).
29. Tex. Nat. Res. Code § 85.389
30. Tex. Tax Code § 152.101(b).
31. Judge Douglas set out a similar example of the absurdity of the logic in Moore which dealt
with the offense of criminal attempt. He said:

 There is no sound reason in policy or logic for the Legislature to intend to omit an
attempted provision from the Controlled Substances Act. Such omission would lead to
the absurd result that one could be prosecuted if a pharmacist gave him a prohibited
substance in reliance on a forged prescription, but not if the pharmacist recognized and
frustrated the criminal enterprise before it was completed. The Legislature could not
have intended such a result.

545 S.W.2d at 143. Judge Douglas is absolutely correct.
32. 545 S.W.2d 140 (Tex. Crim. App. 1976).
33. Id. at 141-42 (citing art. 4476-15, V.A.C.S., Sec. 4.09(a)(3)).
34. Id. at 142.
35. Id.
36. Id. at 143 (Douglas, J., dissenting).
37. Id. at 143-44. Section 1.05(a) provides:

 The rule that a penal statute is to be strictly construed does not apply to this code. The
provisions of this code shall be construed according to the fair import of their terms, to
promote justice and effect the objectives of the code.

Tex. Penal Code § 1.05(a).
38. Id. at 143. Unfortunately, Judge Douglas followed down Commissioner Davis's linguistic
primrose path and mistakenly adopted his "apply to" language. He should have rephrased the issue
first, and then he would have concluded: "Offenses defined in the Controlled Substances Act may form
the basis of a criminal attempt prosecution under section 15.01 of the Penal Code."
39. Id. at 142.
40. 547 S.W.2d 627 (Tex. Crim. App. 1977).
41. Baker v. State, 547 S.W.2d 627, 628 (Tex. Crim. App. 1977).
42. Id.
43. Tex. Rev. Civ. Stat. art. 4476-15, § 4.052 (added by Acts 1981, 67
th Leg., ch. 268, § 2,
eff. Sept. 1, 1981).
44. Tex. Penal Code § 1.07(a)(23).
45. A somewhat more felicitous phrasing might be: "All of the provisions of this Code apply to
offenses defined by other laws, unless the statute defining the offense provides otherwise . . . ." But
again, there might be numerous unintended and unforeseen consequences with a broad application of
every provision of the Penal Code applying to every criminal offense defined in other Texas statutes.