In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00199-CR


______________________________




STEPHEN RUSSELL SWILLING, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 115th Judicial District Court


 Upshur County, Texas


Trial Court No. 14,197




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Stephen Russell Swilling appeals from his conviction on his open plea of guilty to the offense
of evading arrest/detention with a vehicle. See Tex. Penal Code Ann. § 38.04 (Vernon 2003). The
court sentenced Swilling to one year's confinement in a state-jail facility. See Tex. Penal Code
Ann. § 12.35 (Vernon Supp. 2008). Swilling was represented by appointed counsel at trial and by
different appointed counsel on appeal. Swilling's appellate attorney has filed a brief in which he
concludes, after a review of the record and the related law, that the appeal is frivolous and without
merit. 

 Appellate counsel states that he has studied the record and finds no error preserved for appeal
that could be successfully argued. The brief contains a professional evaluation of the record and
advances three arguable grounds for review. This meets the requirements of Anders v. California,
386 U.S. 738 (1967); Stafford v. State, 813 S.W.2d 503 (Tex. Crim. App. 1991); and High v. State,
573 S.W.2d 807 (Tex. Crim. App. [Panel Op.] 1978).

 Counsel mailed a copy of the brief to Swilling March 3, 2008, informing Swilling of his right
to examine the entire appellate record and to file a pro se response. Counsel simultaneously filed
a motion with this Court seeking to withdraw as counsel in this appeal. This Court notified Swilling
that any pro se response was due on or before April 7, 2008. Swilling has not filed a response, nor
has he requested an extension of time in which to file such a response. 

 We have reviewed the possible issues raised by counsel in his appellate brief, and we agree
that: (1) the trial court properly admonished Swilling of his rights at trial and that Swilling's plea
of guilty was voluntary; (2) the failure, if any, to serve Swilling with a copy of the indictment was
waived, and further, Swilling's attorney stated that Swilling had been served, that he had sufficient
time to prepare, and waived arraignment; and (3) the record does not reveal ineffective assistance
of counsel under the guidelines of Strickland v. Washington, 466 U.S. 668 (1984). 

 Swilling entered a voluntary, open plea of guilty to the state-jail felony offense of evading
arrest/detention with a motor vehicle. Swilling was properly admonished by the trial court before
his plea of guilty was entered. He testified he had committed the offense and signed a written
stipulation of evidence. He was sentenced to one year's confinement in a state-jail facility, out of
a maximum punishment allowed by statute of two years' confinement and a fine of $10,000.00. Our
review has not revealed any reversible error. (1)


 We affirm the judgment of the trial court. 




 Josh R. Morriss, III

 Chief Justice


Date Submitted: May 7, 2008

Date Decided: May 8, 2008


Do Not Publish




1. Since we agree this case presents no reversible error, we also, in accordance with Anders,
grant counsel's request to withdraw from further representation of Swilling in this case. No
substitute counsel will be appointed. Should Swilling wish to seek further review of this case by the
Texas Court of Criminal Appeals, Swilling must either retain an attorney to file a petition for
discretionary review or he must file a pro se petition for discretionary review. Any petition for
discretionary review must be filed within thirty days from the date of either this opinion or the last
timely motion for rehearing that was overruled by this Court. See Tex. R. App. P. 68.2. Any petition
for discretionary review must be filed with this Court, after which it will be forwarded to the Texas
Court of Criminal Appeals along with the rest of the filings in this case. See Tex. R. App. P. 68.3. 
Any petition for discretionary review should comply with the requirements of Rule 68.4 of the Texas
Rules of Appellate Procedure. See Tex. R. App. P. 68.4.


R1">
 (1) expressly represents the substance to be a controlled
substance; [or]


 (2) represents the substance to be a controlled substance in a
manner that would lead a reasonable person to believe that the substance is
a controlled substance . . . .


Tex. Health & Safety Code Ann. § 482.002(a). 

 "Simulated controlled substance" is defined as "a substance that is purported to be a
controlled substance, but is chemically different from the controlled substance it is purported to be." 
Tex. Health & Safety Code Ann. § 482.001(4) (Vernon 2003). "Expressly represents," under
Section 482.002(a)(1), requires the use of the specific term defined in the Controlled Substances Act,
e.g., "methamphetamine," and not a slang equivalent. See Grant v. State, 822 S.W.2d 639 (Tex.
Crim. App. 1992); Jenkins v. State, 820 S.W.2d 178 (Tex. Crim. App. 1991); Boykin v. State, 818
S.W.2d 782 (Tex. Crim. App. 1991). "Represents," under Section 482.002(a)(2), is further explained
in Section 482.003, which provides evidentiary rules for determining whether a person has
represented a simulated controlled substance to be a controlled substance in a manner that would
lead a reasonable person to believe the substance was a controlled substance. See Tex. Health &
Safety Code Ann. § 482.003 (Vernon 2003). The statute establishes that, in making the
determination, the court: 

 may consider, in addition to all other logically relevant factors, whether: 


 (1) the simulated controlled substance was packaged in a manner
normally used for the delivery of a controlled substance;


 (2) the delivery or intended delivery included an exchange of or
demand for property as consideration for delivery of the substance and the
amount of the consideration was substantially in excess of the reasonable
value of the simulated controlled substance; and 


 (3) the physical appearance of the finished product containing the
substance was substantially identical to a controlled substance.


Tex. Health & Safety Code Ann. § 482.003(a). 

 Palmer was found to have delivered "by actual transfer" a substance purported to be, by
express representation or in a manner that would lead a reasonable person to believe it was,
methamphetamine. The State presented evidence that the transfer, i.e., the exchange of money for
substance, took place outside Troup in Cherokee County. Nonetheless, the State asserts that the
representation that the substance was methamphetamine took place during negotiations for the sale
at Palmer's house in the Smith County part of Troup. 

 Palmer asserts that the representation that the substance was methamphetamine must be made
contemporaneously with the delivery, which was in Cherokee County. Palmer asserts that myriad
cases require that the representation that a substance is a controlled substance be made
contemporaneously with the sale or transfer of that substance. See Grant, 822 S.W.2d 639; Jenkins,
820 S.W.2d 178; Boykin, 818 S.W.2d 782; Evans v. State, 945 S.W.2d 259 (Tex. App.--Houston
[1st Dist.] 1997, pet. ref'd); Holliman v. State, 692 S.W.2d 120 (Tex. App.--Waco 1985, pet. ref'd). 
We have reviewed Palmer's cited cases and disagree. In all these cases, to the extent the facts
indicate any sense of the timing of the delivery and representation, these elements seem to have
occurred at least relatively contemporaneously. But in none of these cases is the timing of the
elements in issue. None of Palmer's cited cases analyzes, let alone requires, contemporaneity
between the representation and the delivery. 

 Neither is contemporaneity required under the plain language of the statute. See Tex.
Health & Safety Code Ann. § 482.002(a). We are also not persuaded by Palmer's contention that
the chapter's nonexclusive evidentiary rules (see Tex. Health & Safety Code Ann. § 482.003)
mandate that the representation and delivery elements be contemporaneous. While it is true that the
first and third considerations (the packaging and physical appearance of the substance actually
transferred) cannot be observed until actual transfer, the second consideration (exchange of or
demand for property as consideration) does not require actual transfer at all. See Tex. Health &
Safety Code Ann. § 482.003(a). This is consistent with the statutory definition of "delivery,"
which is not limited to physical transfer and "includes offering to sell a simulated controlled
substance." Tex. Health & Safety Code Ann. § 482.001(2) (Vernon 2003). To interpret the
statute to mean that a representation that a substance is a controlled substance may only be made
contemporaneously with actual transfer of the simulated controlled substance would create, rather
than resolve, an ambiguity in the statute that otherwise defines the offense in such a way as to not
require actual transfer. Where a statute is clear and unambiguous, the Legislature must be
understood to mean what it has expressed, and it is not for the courts to add or subtract from the
statute. Boykin, 818 S.W.2d 782. We decline to add a contemporaneity requirement to the statute.

 Thus, if sufficient evidence supports that Palmer made a representation in Smith County that
a simulated controlled substance was a controlled substance--either expressly or in a manner that
would lead a reasonable person to believe the substance was a controlled substance--then venue in
Smith County was appropriate.

D. The Evidence

 Steve Henry, a detective with the Smith County Sheriff's Department, testified that on July
20, 2006, he and a confidential informant (CI) went to Palmer's house on the Smith County side of
Troup, Texas. Henry remained in the car while the CI spoke with Palmer. Palmer and the CI's brief
conversation was recorded, with video and audio, on a camera concealed in a button. The State
played the DVD of the July 20 meeting for the jury. (2) 

 The State commented at the trial while the DVD was playing: "[y]ou hear the defendant
stating that he could basically get an eight ball -- he can get an eight ball for [the CI], isn't that
correct?" Detective Henry agreed. Henry explained that, "[w]ith individuals that are in the drug
industry," an "eight ball" is a common name for "3.5 grams of methamphetamine." Henry also stated
that, based on his training and experience, he reasonably believed that Palmer was going to be
producing methamphetamine based on the "offer to sell that dope" on July 20. 

 The CI testified that on July 20, he received money from Detective Henry to try to purchase
drugs from Palmer but that he was not able to purchase on that day. The CI agreed that on July 20,
he  and  Palmer  talked  about  setting  up  a  deal  to  buy  methamphetamine.  The  CI  stated  that
on July 20, Palmer "said a gram was, like, 100 to 8 bucks. And he couldn't get -- could buy an eight
ball for $250; and I didn't have enough money to get an eight ball that day" and Palmer did not have
the "eight ball" at that time, either. The CI also said that on July 20, Palmer offered to sell him "an
eight ball for 250 bucks." 

 Henry and the CI returned to Palmer's house in Smith County on July 25, 2006. Again,
Henry stayed in the car while the CI went to the house and spoke with Palmer. A second DVD, of
the meeting at Palmer's house on July 25, was played for the jury, and Henry again commented as
it played. (3) 

 Henry related that on the July 25 DVD, the CI said, "[w]e got the money for the eight ball,"
and Palmer replied it would take forty-five minutes to get an eight ball. The CI said that he engaged
in discussions about the methamphetamine and "ice" on July 25 at Palmer's home. The CI agreed
that Palmer, at his home, represented that the substance he was going to purchase was
methamphetamine by referring to it as an "eight ball" and "ice." The CI also testified that based on
Palmer's representations and the CI's knowledge, the CI believed the substance they were discussing
was methamphetamine. The CI also said that he is familiar "with some of the suppliers" in the Troup
area and with "Palmer as being a supplier." 

 The DVDs shown to the jury establish that Palmer, in Smith County, first established a price
of about $250.00 for an "eight ball" and later agreed to meet to provide a "ball." The jury heard
testimony from the CI and Detective Henry that the term "eight ball" carries, in the drug community,
a particular and common meaning: 3.5 grams of methamphetamine. The jury heard the testimony
of Henry and the CI that, based on Palmer's representations in Smith County, they believed he was
representing that he would deliver a controlled substance. The fact that further representations were
also made in Cherokee County is of no consequence. See Wood, 573 S.W.2d at 210 (a single
element can occur in several counties); Tucker v. State, 751 S.W.2d 919, 924 (Tex. App.--Fort
Worth 1988, writ ref'd) (continuing transaction, in which an offense is committed across several
counties raises venue in one of those counties).

 Viewing the evidence in the light most favorable to the verdict, a rational jury could have
found, by a preponderance of the evidence, that the representation element of the offense occurred
in Smith County. Viewing all the evidence in a neutral light, we cannot say the evidence supporting
venue in Smith County is outweighed by the great weight and preponderance of the evidence or is
so weak that the finding of venue in Smith County is clearly wrong or manifestly unjust. The jury
could reasonably conclude, by a preponderance of the evidence, that the representation element of
the offense was committed in the county alleged. We overrule the point of error. 

 We affirm the judgment.


 Bailey C. Moseley

 Justice


Date Submitted: November 21, 2007

Date Decided: December 5, 2007


Do Not Publish

1. This is not a case in which the exact location within the State of Texas where the offense
occurred cannot be readily identifiable, thus allowing prosecution in the county of the defendant's
residence. See Tex. Code Crim. Proc. Ann. art. 13.19 (Vernon 2005). Neither is it a case where
the offense occurred on, or within 400 yards of, a county line. See, e.g., Tex. Code Crim. Proc.
Ann. art. 13.04 (Vernon 2005) (applicable to an "offense committed on the boundaries of two or
more counties, or within four hundred yards thereof"). 
2. The DVD has poor audio and video quality. Nonetheless, our review of the DVD reveals
that the DVD depicts a markedly different exchange than that testified to by the State's witnesses. 
Our review of this DVD reveals that the CI asked about "coke"; Palmer responded that the CI had
contacted him about "weed." Palmer stated he did not know how much a "G" costs. The CI asked
how much "an eight ball" would cost and Palmer replied, "normally costs 250. Could be 3-0. I don't
know." 
3. The second DVD also has poor audio and video quality and, again, our review reveals a
different exchange than that testified to by the State's witnesses. In our review of the July 25 DVD,
the CI states, "I'm trying to get a ball." Palmer replies, "Oh really? When do you need it?" The CI
answers, "Now." Palmer states, "It'll take about 45 minutes."