**Opinion filed February 11, 2021**



## In The

# Eleventh Court of Appeals

_____

## No. 11-19-00218-CR

_____

## JOHN JOHNSON, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 21463B**

## M E M O R A N D U M   O P I N I O N

In the first count of a two-count indictment, the grand jury indicted John Johnson, Jr., Appellant, for the offense of continuous sexual abuse of a child or children. The grand jury alleged four manner and means by which Appellant committed the offense of continuous sexual abuse of a child or children: by committing the offense of aggravated sexual assault by causing the penetration of

the female sexual organ of M.J. with Appellant's male sexual organ; by committing the offense of sexual assault by causing the penetration of the female sexual organ of M.J. with Appellant's male sexual organ; by committing the offense of sexual assault by causing the penetration of M.J.'s mouth with Appellant's male sexual organ; and by committing the offense of indecency with a child by touching the genitals of I.J.[1] The indictment contained two enhancement paragraphs as to this count in the indictment.

In the second count of the indictment, the grand jury indicted Appellant for the offense of prohibited sexual conduct. The indictment contained the same two enhancement paragraphs as to Count Two as in Count One.

Appellant pleaded not guilty to the offense charged in the first count of the indictment. However, Appellant pleaded guilty to the offense charged in the second count of the indictment. The jury found Appellant guilty as charged in each count of the indictment.

Appellant elected to have the trial court assess punishment. The State waived the two enhancement paragraphs as to the first count of the indictment. Appellant pleaded true to the enhancement allegations as to the second count of the indictment. The trial court assessed Appellant's punishment at imprisonment for thirty-five years on each count. We affirm the judgments of the trial court.

M.J., one of the victims of sexual abuse, is Appellant's daughter. The other victim, I.J., is a female child born to M.J. after Appellant impregnated her.

According to M.J.'s testimony, the events that culminated in the charges in this case began when she was twelve years old. It was then that Appellant would

---

[1]The acts of sexual abuse set forth are not elements of the offense of continuous sexual abuse of a child or children; they are evidentiary only and are simply the manner and means by which the actus reus by which the offense of continuous sexual abuse of a child is committed. *Guzman v. State*, 591 S.W.3d 713, 730 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

2

look through the window into her room. He also bought her an iPod and, in return for the iPod, told M.J. to put her legs on him. About the same time, he began touching her hair and giving her massages. Then, beginning when M.J. was a thirteen-year-old seventh grader, Appellant began to touch her in a sexual way.

M.J. testified that the sexual abuse that she suffered from her father before she was fourteen years old included these acts by her father: he touched her on her breasts with his hands; touched her female sexual organ with his hands and his mouth; and made her touch his male sex organ with her hands and with her mouth. M.J. did not remember the exact date of each time that Appellant sexually abused her, but it happened "[p]robably every other day." It went on "continuously" when she was thirteen and fourteen years old. The same activities continued until Appellant stopped when M.J. was seventeen years old, some five years after the sexual abuse began.

But according to M.J., Appellant later sexually assaulted her one more time when she was nineteen. At that time, Appellant had sexual intercourse with M.J. This time, she became pregnant and later gave birth to I.J.

Rachel Burch, a forensic DNA analyst at University of North Texas Center for Human Identification in Fort Worth, testified that DNA tests that she performed showed that "at least 99.99999998 percent of the male population is excluded from the possibility of being the biological father of the child, [I.J.]." She further testified that it is "150 billion times more likely . . . that [Appellant] is the true biological father of [I.J.] than if the father is an untested, unrelated, random man from the African American population."

M.J. testified that, when I.J. was four years old, M.J. saw her "laying on her back and . . . massaging her vagina." M.J. asked I.J. "where she got it from." I.J. responded, "Well, Pawpaw does it." M.J. asked I.J., "What else does he do?" I.J.

told M.J. that "[h]e touches my nipples." M.J. testified that at that point, her "heart just dropped."

M.J. telephoned her brother Elijah and told him about the accusation that I.J. had made. She also telephoned Appellant and told him about what I.J. had said. Appellant denied the allegations and told M.J. to put I.J. on the phone. According to M.J., Appellant asked I.J., "Pawpaw been touching you?" I.J. replied, "Yes." Appellant told I.J., "You know, if you say that, Pawpaw going to go to jail and you're not going to see me no more." I.J. replied, "Okay."

M.J. took I.J. to the hospital. Officer Chris Volirakis with the Abilene Police Department was dispatched to the hospital. At the hospital, M.J. told Officer Volirakis basically the same facts about Appellant's touching I.J. as M.J. testified to during the trial. A sexual assault nurse examiner examined I.J. Although the sexual assault nurse examiner did not note any acute injuries, there was some redness inside I.J.'s labia minora. The testimony at trial indicated that acute injuries are not typically found in cases that involve the type of contact involved with I.J. here.

M.J. testified that she posted an account on Facebook about what had happened to I.J. Appellant and M.J.'s brother Zachary found out about the post and a confrontation ensued at Appellant's house. The confrontation was mainly between Appellant, Zachary, and M.J. At some point during the confrontation, Zachary "punched" M.J., and M.J. called the police. Officer Zach Hall of the Abilene Police Department responded to the disturbance call at Appellant's residence.

Both Officer Volirakis and Officer Hall made reports of the incidents in which they were involved. Detective Robert Collins, an investigator with the Abilene Police Department–Special Victims Unit, received those reports and an assignment to the case a few days after M.J. took I.J. to the hospital.

4

Detective Collins arranged for personnel at the Child Advocacy Center to conduct a forensic interview of I.J. Although I.J. did not make an "outcry" during the interview, Detective Collins testified that I.J. did identify "her pawpaw, and she pointed to her genital area."

During his investigation, Detective Collins discovered that there were two reports on file with the Abilene Police Department that reflected that the Abilene Police Department had had prior involvement with the Johnson family. The first of those reports was made in 2009 when M.J. was thirteen years old. The second report was made in 2010 and contained similar allegations, "sexual in nature," against Appellant. As to each of those reports, M.J. had, at some point, recanted the allegations. M.J. testified at trial that she recanted at the time because her mother and Appellant told her that she would have to "go in court" and everyone would find out. Also, her aunt and uncle accused her of lying and making it all up. "So . . . I just told [the detectives] I made it up."

After the forensic interviewer completed her interview with I.J., Detective Collins talked with M.J. Detective Collins asked M.J. "point-blank" whether the allegations in the prior reports were in fact true. M.J. dropped her head, became upset and very distraught, and began to cry. After Detective Collins gave M.J. a few minutes, M.J. told Detective Collins that the allegations in the prior reports were true. Detective Collins testified that M.J. made "it very clear that the previous allegations were true and [that] they did happen."

Detective Collins interviewed M.J. again later. She told Detective Collins that, when she was around thirteen, she lived with Appellant. "She said that he did things to her sexually frequently." Those things happened at the residence and at Appellant's office building late at night when everyone had left the building.

5

John Wayne Johnson, one of M.J.'s brothers, testified at trial. When M.J. was thirteen years old, John Wayne caught Appellant as Appellant tried to sneak through the window to M.J.'s room. Just prior to that, Appellant locked M.J.'s door from the inside and told John Wayne not to bother her because she was grounded. Appellant then told John Wayne that he was going to take a nap and not to bother him. During this incident, M.J. sent a text to John Wayne in which she wrote, "He's going to try to rape me." "Please come in. I left the door unlocked for you." John Wayne looked out the door and saw Appellant climb out through the window of Appellant's own room. John Wayne went to M.J.'s room, opened the door, and saw Appellant trying to climb through the window into M.J.'s room. M.J. was lying "on the bed screaming and crying, saying he's trying to do it to her again, to please call the cops."

Appellant came back into the house and said that he was sorry and that it would never happen again. According to John Wayne, later that night Appellant took him and his brothers on a drive so that he could "allegedly" apologize to them. Appellant told them, "I never meant to bring y'all shame."

Another of M.J.'s brothers, Isaiah Johnson, testified at trial. Isaiah testified that, on one occasion, M.J. sent a text to him in which she wrote: "He's taking me out of class. Could you call the cops, because I think that he's going to do that again?" Isaiah dialed 9-1-1, but he hung up before anyone answered. Isaiah testified to essentially the same facts as John Wayne did about Appellant's taking the brothers on the drive to apologize the night after John Wayne caught Appellant climbing out through the window in Appellant's room and climbing in through the window to M.J.'s room.

Isaiah also testified that, when M.J. was thirteen years old, their mother told him, John Wayne, and another brother, Zachary, that Appellant was sexually

6

assaulting M.J. At some point in time, M.J.'s mother had been deported to Mexico and had lived there since 2014; she did not testify at the trial.

Isaiah also testified that, on one occasion, he had stopped by the house to check in as they were expected to do. When he knocked and no one answered, he suspected what was happening. He went to M.J.'s window, looked in, and saw that M.J. was crying and that their mother was holding M.J. and saying, "Leave her alone. She's a child." Appellant was in the room.

The overarching theme of Appellant's complaints on appeal is that Section 21.02 of the Texas Penal Code, the statute by which the legislature criminalized continuous sexual abuse of a child or children, is unconstitutionally vague as applied to him. However, trial counsel did not make that challenge at trial. When a defendant fails to object that a statute is unconstitutionally vague as applied, he waives appellate review of the complaint. *Williams v. State*, 305 S.W.3d 886, 893 (Tex. App.—Texarkana 2010, no pet.) (citing Curry v. State, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995)). Therefore, if Appellant had made that direct complaint on appeal, he would not have preserved the issue for review.

But rather than directly presenting the constitutional argument for review, Appellant has phrased his first issue on appeal as a complaint about the application paragraph in the trial court's charge to the jury. When couched in that manner, and although no jury charge objections were lodged in the trial court in this case, no objection is necessary to preserve the jury charge complaint. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). We must consider a jury charge complaint regardless of whether an appellant lodged an objection in the trial court. *Id.* Whether an appellant lodged an objection in the trial court is important only after we have found error and begin to assess harm from the error. *Id.*

Our review of the complaints that Appellant presents in his third issue on appeal is akin to our review of the complaint that Appellant raised in his first issue on appeal in that our review of both will require statutory construction. In his third issue on appeal, Appellant alleges that his trial counsel rendered ineffective assistance when counsel failed to object to the jury charge and when counsel failed to challenge Section 21.02(b) as unconstitutionally vague as applied.

The first issue on appeal, as set forth by Appellant, is: "The trial court's jury instruction erroneously applied Section 21.02(b) with respect to the 30-day 'continuous' requirement by permitting the submission of two separate victim offenses when both alleged victims were not under the age of 14 at the same time."

Basically, Appellant argues that Section 21.02(b) of the Texas Penal Code is ambiguous in that the meaning of "a period that is 30 or more days in duration" is indeterminable when applied "to more than one child victim." Appellant contends that is so because, when applied to more than one victim, "the duration period is indeterminable" and therefore ambiguous "when the victims of single assaults are tied together for the purpose of proving a continuous sexual assault." The question is, according to Appellant, that in order to establish the "continuous" element of the offense when there is more than one victim, "[D]oes Section 21.02(b) require both children to be under the age of 14 at the same time of the offense or, as the [S]tate asserts, the assault of any two children under age 14, made at any time, suffices for proving 'continuous' under 21.02(b), provided that the 30-day requirement is met?"

We take Appellant's stance to be one in which he argues that Section 21.02(b) of the Texas Penal Code leads to an absurd result and is also ambiguous because it is subject to more than one meaning (that "one or more victims" means "children in-being, not children yet to be born"). Thus, Appellant contends, we are called upon to interpret Section 21.02(b) and, in doing so, will conclude that the statute is

8

ambiguous and calls for an absurd result when there are two or more victims when both are not "under the age of 14 at the same time of the offense." All that, Appellant contends, leads to the conclusion that the trial court improperly charged the jury when it applied the law to the facts.

The crime with which the State charged Appellant in Count One of the indictment is continuous sexual abuse of a young child or children as provided for in Section 21.02(b) of the Texas Penal Code. Section 21.02(b) of the Texas Penal Code provides:

> (b) A person commits an offense if:
>
> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and
>
> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense.

TEX. PENAL CODE ANN. § 21.02(b) (West 2019).

Statutory construction is a question of law that we review de novo. *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019); *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011). When we construe a statute, we must "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). We will first examine the literal text of the statute. *McMillian v. State*, 388 S.W.3d 866, 871 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "[W]e read words and phrases in context and construe them according to the rules of grammar and usage." *Harris*, 359 S.W.3d at 629 (quoting *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App.

9

2008)). We must "presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *Id.* (quoting *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997)). "Only if the statutory language is ambiguous, or leads to absurd results that the Legislature could not have possibly intended, may we consult extra-textual sources." *Id.* (citing *Boykin*, 818 S.W.2d at 785). "If the language of the statute is plain, we follow that language unless it leads to absurd results that the legislature could not have possibly intended." *Sims*, 569 S.W.3d at 640. A statute is ambiguous in those situations where reasonable, well-informed persons might understand the statute to have two or more different meanings. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). We will examine the statute in accordance with these standards.

First, we will consider the literal text of Section 21.02(b). In *Coker*, the court examined Section 21.02(b) in the context of a challenge that the statute was unconstitutionally vague in all instances and as applied. *Coker v. State*, No. 12-09-00331-CR, 2010 WL 5031098, at *3 (Tex. App.—Tyler Dec. 8, 2010, no pet.) (mem. op., not designated for publication). We find *Coker* to be persuasive. "This statute, a collection of already illegal acts, does not, by virtue of its combining nature, create an admixture that is any more difficult to comprehend than any of its component parts." *Id.* at *2. The court held that the term "30 or more days in duration" was not difficult to understand. *Id.* at *3. We are to assume that the legislature meant what it said. *Griffith v. State*, 166 S.W.3d 261, 262 (Tex. Crim. App. 2005).

Under the plain language of the statute, the State must prove (1) that during a period of time that was thirty or more days in duration, (2) the accused committed two or more acts of sexual abuse, regardless of whether the sexual abuse was committed against one or more victims, (3) that at the time of the commission of

each of the acts of sexual abuse the accused was 17 years of age, and (4) that the victim was a child younger than 14 years of age. PENAL § 21.02(b); *Martin v. State*, 335 S.W.3d 867, 871–72 (Tex. App.—Austin 2011, pet. ref'd). We believe that the language of Section 21.02(b) is straightforward and unambiguous and that it does not lead to an absurd result. The statute clearly provides that a person must not, during a period of time that is thirty or more days in duration, commit two or more acts of sexual abuse against one or more victims at a time when the actor is seventeen years of age or older and the victim is younger than fourteen years of age. If the legislature wishes to prohibit the tacking of offenses such as those involved in this case, it may do so, of course. It is not our prerogative to add to or to take anything away from the statute. *McMillian*, 388 S.W.3d at 872 (citing *Boykin*, 818 S.W.2d at 785).

We agree with the courts' holdings in *McMillian* and *Coker* that the language in Section 21.02(b) is clear and unambiguous. *McMillian*, 388 S.W.3d at 872; *Coker* 2010 WL 5031098, at *3. We hold that the trial court charged the jury in accordance with Section 21.02(b) and did not err when it did. We overrule Appellant's first issue on appeal.

As we have said, in his third issue on appeal, Appellant contends that Appellant's trial counsel rendered ineffective assistance of counsel because trial counsel failed to object to the trial court's erroneous jury charge and because trial counsel failed to challenge Section 21.02(b) as being unconstitutionally vague. We have held that the trial court did not err in the application paragraph of the jury charge. We have likewise held that Section 21.02(b) is neither ambiguous nor does it lead to an absurd result.

In *McMillian*, the court declined to hold that Section 21.02 was unconstitutional as applied. It did so upon the plain language of Section 21.02. The

language of the statute gives a person of ordinary intelligence fair notice of the prohibited conduct, and the language also "provides sufficient guidance to law enforcement personnel that it is not so indefinite that it encourages arbitrary and discriminatory enforcement." *McMillian*, 388 S.W.3d at 874. The statute is neither ambiguous nor does it lead to an absurd result. Therefore, any objection or challenge to the contrary would have been useless and futile. Counsel is not required to perform a useless or futile act. *Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005) ("But a reasonably competent counsel need not perform a useless or futile act."); *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991) ("Counsel is not required to engage in the filing of futile motions."). Appellant did not receive ineffective assistance of counsel as complained of by Appellant. We overrule Appellant's third issue on appeal.

In his second issue on appeal, Appellant claims that the evidence "is insufficient to support a finding that Appellant engaged in sexual intercourse with M.J. when she was under 14 years of age." We agree. M.J. testified that Appellant did not begin to have sexual intercourse with her until she was fourteen years old. We have found no record evidence to the contrary.

However, the indictment contains more than one manner and means by which Appellant committed the offense of continuous sexual abuse of a child or children. Appellant has not challenged the sufficiency of the evidence to show that he caused the penetration of M.J.'s mouth with his male sexual organ when M.J. was under fourteen years of age as prohibited by Section 21.02(b). Furthermore, Appellant has not challenged the sufficiency of the evidence to show that he touched I.J.'s genitals when I.J. was under fourteen years of age, also as prohibited by Section 21.02(b). Rather, Appellant's argument is that, with no proof that Appellant penetrated M.J.'s sexual organ with his sexual organ, and with the removal of the allegation as to

Appellant's sexually abusing I.J., there is only one act of sexual abuse. Because, Appellant argues, the statute requires two or more acts of sexual abuse, the evidence is insufficient to support a conviction for continuous sexual abuse of a child or children.

We have held that the allegations as to the sexual abuse of I.J. were properly included in the trial court's charge. In the absence of a challenge to the sufficiency of the evidence as to that manner and means of committing the offense of continuous sexual abuse of a child or children and in the absence of a challenge to the sufficiency of the evidence as to Appellant's sexually abusing M.J. by penetrating her mouth with his male sexual organ, we overrule Appellant's second issue on appeal without further discussion.

We affirm the judgments of the trial court.

JIM R. WRIGHT
SENIOR CHIEF JUSTICE

February 11, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[2]

Williams, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.